

IN THE
TENTH COURT OF APPEALS

_____

No. 10-08-00328-CV

IN RE AXEL MICHAEL SIGMAR

_____

Original Proceeding

_____

# OPINION

Axel Michael Sigmar seeks a writ of mandamus compelling Respondent, the Honorable Barbara Hale, Judge of the County Court at Law of Walker County, to set aside temporary orders prohibiting him from (1) having unsupervised access to his child due to a potential risk for international abduction and (2) disposing of assets pending an evidentiary hearing on an equitable bill of review his former wife filed seeking to set aside their divorce decree. We will deny the relief requested.

## BACKGROUND

Axel speaks several foreign languages, has a degree from the Massachusetts Institute of Technology, has traveled abroad extensively, and has international business interests in the petroleum industry. He regularly travels to Mexico in pursuit of these

business interests. According to his former wife Lucia, Axel encouraged her to seek employment in 2005 because of financial difficulties. She accepted a position on the faculty of Sam Houston State University and moved with their daughter A.J. to Huntsville in the summer of 2006. The Sigmars resided primarily in Huntsville during the academic year but spent the following summer in Lago Vista where they had lived before Lucia accepted the teaching position.

Axel is involved in several lawsuits both in the United States and in Mexico with millions of dollars at stake. He told Lucia in the summer of 2007 that he had received a threat from "a Mexican fellah" which he reported to the FBI and the Department of Justice on advice of counsel. The threat "pertained" to his family. He testified regarding other business-related threats as well, which he told Lucia about because he "tried to keep her informed." Axel took a concealed weapons course that November and purchased weapons and ammunition to supplement the Glock semi-automatic handgun Lucia already had. Lucia testified that during the Thanksgiving holiday he told her that his life was in danger and he provided her a list of people to contact should anything happen to him.

Axel and Lucia filed a "friendly divorce" in December 2007 with Lucia named as the petitioner. Respondent signed a consent decree two months later. The parties were appointed joint managing conservators of A.J. with both being granted identical visitation rights and neither being granted the exclusive right to designate A.J.'s primary residence. Nevertheless, A.J. lived with Lucia, subject to periodic visitation with Axel. The decree awarded Lucia the residence in Huntsville, one automobile, and

other miscellaneous personal property. The decree awarded Axel the residence in Lago Vista, their interests in a limited partnership which owned an office building in Lago Vista, three automobiles, interests in numerous business entities, three boats, and other miscellaneous personal property. They agreed at the time not to tell A.J. about the divorce.

Axel spent the night at Lucia's home in early June. The next morning he talked with her about wanting to spend more time with A.J. and about his belief that they should tell A.J. about the divorce. He also told her that he had started a relationship with another woman. He spent the day with Lucia and A.J. before departing that evening for a business trip to Mexico. When he returned to the United States five days later, he stopped at Lucia's home to retrieve a trailer. When he arrived there, he was served with Lucia's application for protective order, petition for bill of review, and temporary ex parte protective order.

Respondent later granted Axel's motion to vacate the ex parte protective order. Lucia filed a motion to modify the divorce decree which included a request for temporary orders and a temporary restraining order.[1] Following a hearing, Respondent granted Lucia's requests. In a document entitled "Findings of Fact and Conclusions of Law,"[2] Respondent appointed Lucia as A.J.'s temporary sole managing conservator and

---

[1] Lucia also filed a separate application for a temporary restraining order, temporary injunction, and temporary orders contemporaneously with the motion to modify.

[2] The parties treat this document as Respondent's order, and we do likewise. Rule of Civil Procedure 299a provides that a court's findings "shall not be recited" in the court's order or judgment. TEX. R. CIV. P. 299a. Nevertheless, findings of fact recited in an order or judgment will be accorded probative value so long as they are not in conflict with findings recited in a separate document. *In re U.P.*,

Axel as temporary possessory conservator.  Respondent found that there is a threat to A.J. of international abduction by Axel and ordered that Axel not have possession of or access to A.J. without supervision.  Finally, Respondent enjoined Axel from selling, alienating, or liquidating any assets until an evidentiary hearing on Lucia's bill of review.

**MANDAMUS RELIEF**

Mandamus relief is available only to correct a clear abuse of discretion when there is no adequate remedy by appeal.  *In re Bexar County Criminal Dist. Attorney's Office*, 224 S.W.3d 182, 185 (Tex. 2007) (orig. proceeding); *In re Stearman*, 252 S.W.3d 113, 115 (Tex. App.—Waco 2008, orig. proceeding).  Because temporary orders in a child custody dispute are not subject to interlocutory appeal, mandamus relief is appropriate if the relator establishes a clear abuse of discretion by the respondent.  *See In re Derzapf*, 219 S.W.3d 327, 335 (Tex. 2007) (per curiam) (orig. proceeding); *In re Sanchez*, 228 S.W.3d 214, 217 (Tex. App.—San Antonio 2007, orig. proceeding).  Thus, that portion of Respondent's order prohibiting Axel from having unsupervised access to A.J. due to a potential risk for international abduction is subject to review by mandamus.

However, with regard to the portion of Respondent's order enjoining Axel from disposing of any assets until a hearing on the bill of review, a different result obtains.  This portion of Respondent's order is in the nature of a temporary injunction.  *See In re Tex. Natural Res. Conservation Comm'n*, 85 S.W.3d 201, 205 (Tex. 2002) (orig. proceeding)

---

105 S.W.3d 222, 229 n.3 (Tex. App.—Houston [14th Dist.] 2003, pet. denied); *Hill v. Hill*, 971 S.W.2d 153, 157 (Tex. App.—Amarillo 1998, no pet.).

("A temporary injunction is one which operates until dissolved by an interlocutory order or until the final hearing.") (quoting *Del Valle Indep. Sch. Dist. v. Lopez*, 845 S.W.2d 808, 809 (Tex. 1992)).  Because an interlocutory order granting a temporary injunction is appealable and because we conclude that any benefits to mandamus review in this case do not outweigh the detriments, we hold that the "injunction portion" of Respondent's order is not reviewable by mandamus because Axel had an adequate remedy by appeal. *See In re McKee*, 248 S.W.3d 164, 165 (Tex. 2007) (per curiam) (orig. proceeding) (citing *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 136 (Tex. 2004) (orig. proceeding)). Therefore, we deny Axel's petition insofar as it challenges that portion of Respondent's order enjoining him from "further sales, alienation, and liquidation of assets."

## ABDUCTION PREVENTION MEASURES

Axel first contends that Respondent abused her discretion by issuing temporary orders which prohibit him from having unsupervised access to A.J. because of a potential risk for international abduction.

### Statutes Governing Prevention of International
### Parental Child Abduction

The Texas Legislature enacted a series of statues aimed at international parental child abduction in May 2003.  *See* Act of May 28, 2003, 78th Leg., R.S., ch. 612, § 1, 2003 Tex. Gen. Laws 2002, 2002-04 (codified as TEX. FAM. CODE ANN. §§ 153.501-.503).  Texas was the first state to enact such legislation.  *See* Patricia M. Hoff, *"UU" UCAPA: Understanding and Using UCAPA to Prevent Child Abduction*, 41 FAM. L.Q. 1, 3 n.8 (2007). "In August 2003, the National Conference of Commissioners on Uniform State Laws

appointed a study committee to explore the feasibility of a uniform law to prevent international child abduction." *Id.* at 3 n.11. During this study period, Arkansas, California, Florida and Oregon enacted such laws. *Id.* at 3 n.8. The Uniform Child Abuse Prevention Act was formally approved by the Uniform Law Commissioners in 2006. *Id.* at 1; *see also* UNIF. CHILD ABUSE PREVENTION ACT §§ 1-13, 9 Part IA U.L.A. 33 (Supp. 2008). It has since been adopted by seven states[3] and is under consideration in six others[4] plus the District of Columbia. NAT'L CONFERENCE OF COMM'RS ON UNIF. STATE LAWS, A FEW FACTS ABOUT THE UNIFORM CHILD ABDUCTION PREVENTION ACT, http://www.nccusl.org/Update/uniformact_factsheets/uniformacts-fs-ucapa.asp (last visited Oct. 30, 2008).

According to the pertinent bill analyses, the Texas legislation was based on a study on international abduction conducted by the American Bar Association Center on Children and the Law and funded by the United States Department of Justice, Office of Juvenile Justice and Delinquency Prevention.[5] *See* HOUSE COMM. ON JUVENILE JUSTICE & FAMILY ISSUES, BILL ANALYSIS, Tex. H.B. 1899, 78th Leg., R.S. (2003); HOUSE RESEARCH

---

[3] Colorado, Kansas, Louisiana, Nebraska, Nevada, South Dakota and Utah. NAT'L CONFERENCE OF COMM'RS ON UNIF. STATE LAWS, A FEW FACTS ABOUT THE UNIFORM CHILD ABDUCTION PREVENTION ACT, http://www.nccusl.org/Update/uniformact_factsheets/uniformacts-fs-ucapa.asp (last visited Oct. 30, 2008).

[4] Idaho, Michigan, New Hampshire, New Mexico, Pennsylvania and South Carolina. *Id.*

[5] The final report from that study was published by the OJJDP in 1998. JANET R. JOHNSTON ET AL., PREVENTION OF FAMILY ABDUCTION THROUGH EARLY IDENTIFICATION OF RISK FACTORS (Office of Juvenile Justice & Delinquency Prevention, U.S. Dep't of Justice 1998); *see also* Janet R. Johnston et al., *Early Identification of Risk Factors for Parental Abduction*, JUVENILE JUSTICE BULLETIN (Office of Juvenile Justice & Delinquency Prevention, U.S. Dep't of Justice), Mar. 2001, at 1 n.2. A copy of this report (NCJ 182791) can be obtained from the National Criminal Justice Reference Service. *See* NAT'L CRIMINAL JUSTICE REFERENCE SERV., NCJRS ABSTRACT: NCJ 182791, http://www.ncjrs.gov/App/Publications/abstract.aspx?ID=182791 (last visited Oct. 30, 2008).

ORG., BILL ANALYSIS, Tex. H.B. 1899, 78th Leg., R.S. (2003); *see also* Janet R. Johnston et al., *Early Identification of Risk Factors for Parental Abduction*, JUVENILE JUSTICE BULLETIN (Office of Juvenile Justice & Delinquency Prevention, U.S. Dep't of Justice), Mar. 2001, at 1 (describing funding of study by OJJDP).

The ABA study (and subsequent reports and publications) identified a list of factors which are indicative of a risk of abduction. *See, e.g.,* PATRICIA M. HOFF, FAMILY ABDUCTION: PREVENTION AND RESPONSE 7-8 (5th ed., National Center for Missing and Exploited Children 2002); Johnston et al., *Early Identification of Risk Factors for Parental Abduction*, *passim*. These risk factors appear prominently in the Texas legislation as well as in the UCAPA. *See* TEX. FAM. CODE ANN. § 153.502 (Vernon Supp. 2008); UNIF. CHILD ABUSE PREVENTION ACT § 7(a), 9 Part IA U.L.A. at 41-42. Because of these similarities[6] and because the Texas statutes have been addressed in only one published decision, we will refer to materials construing the UCAPA as persuasive authority for construing the Texas statutes.

Section 153.503 of the Family Code permits a trial court to impose an abduction prevention measure such as supervised visitation if the court finds it necessary because "credible evidence" has been presented which indicates a "potential risk" of international abduction.[7] *See* TEX. FAM. CODE ANN. §§ 153.501(a), 153.503(2) (Vernon

---

[6]   While these statutes are similar in many ways, we note that the UCAPA differs from the Texas statutes insofar as the UCAPA seeks to deter both "domestic and international child abductions." UNIF. CHILD ABUSE PREVENTION ACT prefatory note, 9 Part IA U.L.A. 33 (Supp. 2008).

[7]   Supervised visitation is one of eight specific "abduction prevention measures" provided by section 153.503. *See* TEX. FAM. CODE ANN. § 153.503(2) (Vernon Supp. 2008).

Supp. 2008); *cf.* U NIF. C HILD A BUSE P REVENTION A CT § 4(a), 9 Part IA U.L.A. at 38 (requiring finding "that the evidence establishes a credible risk of abduction").

Section 153.501(b) provides four factors a court "shall consider" in determining whether to impose abduction prevention measures:

(1) the public policies of this state described by Section 153.001(a) and the consideration of the best interest of the child under Section 153.002;

(2) the risk of international abduction of the child by a parent of the child based on the court's evaluation of the risk factors described by Section 153.502;

(3) any obstacles to locating, recovering, and returning the child if the child is abducted to a foreign country; and

(4) the potential physical or psychological harm to the child if the child is abducted to a foreign country.

T EX. F AM. C ODE A NN. § 153.501(b) (Vernon Supp. 2008); *see Boyo v. Boyo*, 196 S.W.3d 409, 423 (Tex. App.—Beaumont 2006, no pet.).

**Standard of Review**

We review a court's decision to impose "abduction prevention measures," which are based on a finding that there is a potential risk of international abduction, under an abuse-of-discretion standard. *See Karenev v. Kareneva*, No. 02-06-00269-CV, 2008 WL 755285, at *1 n.5 (Tex. App.—Fort Worth Mar. 20, 2008, no pet.) (mem. op.); *Boyo*, 196 S.W.3d at 424. We do not conduct an independent review of findings of fact in such a case under traditional legal and factual sufficiency standards. *In re Z.A.T.*, 193 S.W.3d 197, 203 (Tex. App.—Waco 2006, pet. denied); *accord In re Keller*, 233 S.W.3d 454, 459 (Tex. App.—Waco 2007, pet. denied) (guardianship proceeding). Rather, legal and

factual sufficiency are factors which can be considered in determining whether an abuse of discretion has occurred. *Id.*

We view the evidence in the light most favorable to Respondent's decision. *Keller*, 233 S.W.3d at 459; *Paradigm Oil, Inc. v. Retamco Operating, Inc.*, 161 S.W.3d 531, 536 (Tex. App.—San Antonio 2004, pet. denied). An abuse of discretion does not occur when the decision is based on conflicting evidence. *Davis v. Huey*, 571 S.W.2d 859, 862 (Tex. 1978); *Keller*, 233 S.W.3d at 459; *Smith v. McCarthy*, 195 S.W.3d 301, 305 (Tex. App.—Fort Worth 2006, pet. denied). Conversely, an abuse of discretion does occur when a court acts "without reference to any guiding rules and principles" or in an arbitrary and unreasonable manner. *City of San Benito v. Rio Grande Valley Gas Co.*, 109 S.W.3d 750, 757 (Tex. 2003) (quoting *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985)); *In re J.D.M.*, 221 S.W.3d 740, 742 (Tex. App.—Waco 2007, no pet.).

### Potential Risk of Abduction

Section 153.502 provides statutory "abduction risk factors" for a court to consider in determining whether there is a potential risk of international abduction. *See* TEX. FAM. CODE ANN. § 153.502 (Vernon Supp. 2008). Subsection (a) provides a list of six preliminary factors the court "shall consider," including whether the parent: (1) "has taken, enticed away, kept, withheld, or concealed" the child; (2) has threatened to do so; (3) "lacks financial reason to stay in the United States"; (4) "has recently engaged in planning activities that could facilitate the removal of the child from the United States";

(5) "has a history of domestic violence"; or (6) "has a criminal history or a history of violating court orders." *Id.* § 153.502(a); *see Karenev*, 2008 WL 755285, at *2.

If upon consideration of the factors in subsection (a) the court finds "credible evidence of a risk of abduction," "the court shall also consider":

> (1) whether the parent has strong familial, emotional, or cultural ties to another country, particularly a country that is not a signatory to or compliant with the Hague Convention on the Civil Aspects of International Child Abduction; and
>
> (2) whether the parent lacks strong ties to the United States, regardless of whether the parent is a citizen or permanent resident of the United States.

TEX. FAM. CODE ANN. § 153.502(b); *see Karenev*, 2008 WL 755285, at *2; *Boyo*, 196 S.W.3d at 423.

In addition, if the court finds "credible evidence of a risk of abduction" under subsection (a), "the court may also consider": (1) "whether the parent is undergoing a change in status with the United States Immigration and Naturalization Service that would adversely affect that parent's ability to legally remain in the United States"; (2) whether INS has denied the parent's application for citizenship; (3) whether the parent has forged or presented misleading or false evidence to obtain a visa, passport, or other identification card or has made any misrepresentation to the federal government; or (4) whether the foreign country to which the parent has ties presents legal or practical obstacles to the recovery and return of a child who is abducted to that country or poses

a risk of harm to the child.[8]  TEX. FAM. CODE ANN. § 153.502(c); *see Boyo*, 196 S.W.3d at 424.

Unlike the dichotomy of risk factors provided in section 153.502, section 7 of the UCAPA lists thirteen risk factors without assigning greater weight to one over another. *See* UNIF. CHILD ABUSE PREVENTION ACT § 7(a), 9 Part IA U.L.A. at 41-42.  Most of the factors listed in section 7 of the UCAPA are substantially similar to the factors listed in section 153.502.

*Respondent's Findings*

Here, Respondent found under subsection (a)(4) that Axel "has recently engaged in planning activities that could facilitate [A.J.'s] removal" by liquidating assets.  Under subsection (b)(1), Respondent found that Axel has strong ties[9] to Austria and Mexico.[10] Respondent found under subsection (c) that: "Austria and/or Mexico":

(1)     present obstacles to the recovery and return of an abducted child;

(2)     have no legal mechanisms for the immediate and effective enforcement of a child custody order;

(3)     have local laws or practices that would:

---

[8]     The statute provides a list of ten factors to consider in deciding whether the foreign country presents obstacles to the recovery and return of a child who is abducted or poses a risk of harm to that child.  *Id.* § 153.502(c)(4) (Vernon Supp. 2008).

[9]     Actually, Respondent found that Axel has "strong ties" to "another country" and then made a separate finding immediately thereafter that he "has ties to Austria and Mexico."  We construe these findings together as a finding that he has "strong ties" to Austria and Mexico.

[10]     Although subsection (b)(1) requires a court to consider whether the parent has strong ties to any foreign country, the subsection draws particular attention to countries which are not signatories to the Hague Convention on the Civil Aspects of International Child Abduction.  *Id.* § 153.502(b)(1) (Vernon Supp. 2008).  Both Austria and Mexico are signatories to the Hague Convention.

(a) enable Axel to prevent Lucia from contacting A.J. without due cause;

(b) restrict Lucia from freely traveling to or exiting from the country because of gender, nationality, or religion; and

(c) restrict A.J.'s ability to legally leave the country when she reaches the age of majority because of gender, nationality, or religion;

Respondent further found that Mexico in particular: (1) is a country for which the State Department has issued a travel warning to U.S. citizens; and (2) poses a risk to A.J.'s physical health and safety because of her specific circumstances and because of "human rights violations committed against children, including child labor and lack of child abuse laws." *Id.* § 153.502(c)(4)(A), (B), (C), (E), (J).

*Analysis*

Sigmar first complains that Respondent heard evidence which would support an affirmative finding on only one of the six preliminary factors listed in subsection (a) for determining whether there is a risk of international abduction and disregarded evidence which negates an affirmative finding on the other five factors. It is not clear whether Sigmar believes there must be evidence supporting affirmative findings on all six preliminary factors or a majority of them or some other quantum. Nevertheless, our review of the pertinent statutory language leads us to the conclusion that an affirmative finding on only one of these preliminary factors (if supported by the evidence) is all that is required to proceed to a consideration of the additional factors listed in subsections (b) and (c).

To begin with, the statute states that "the court shall *consider* evidence" relevant to the six factors. *Id.* § 153.502(a) (emphasis added). The statute does not specify the number of factors on which a court must make an affirmative finding. *See, e.g., Boyo*, 196 S.W.3d at 423 (record contained evidence to support affirmative findings on two of the six preliminary factors). In addition, the statute lists these factors in the disjunctive.

The comment to section 7 of the UCAPA suggests that no particular quantum of risk factors is required.

> The more of these factors that are present, the more likely the chance of an abduction. However, the mere presence of one or more of these factors does not mean that an abduction will occur just as the absence of these factors does not guarantee that no abduction will occur.

UNIF. CHILD ABUSE PREVENTION ACT § 7 cmt., 9 Part IA U.L.A. at 42.

For these reasons, we hold that evidence sufficient to support an affirmative finding on only one of the six preliminary factors may constitute "credible evidence of a risk of abduction" sufficient for a court to consider the additional factors listed in subsections (b) and (c).

Here, Respondent found that Axel had "recently engaged in planning activities that could facilitate [A.J.'s] removal" by liquidating unspecified assets. *See* TEX. FAM. CODE ANN. § 153.502(a)(4)(E). In this regard, the evidence reflects that Axel sold an office building in Austin for $453,000 in April 2008. He testified that he had to sell the building to pay a $150,000 retainer to a Washington D.C. law firm, but he offered no documentary evidence to support this testimony, and he did not account for the

remaining $283,000 in proceeds other than to say it would be applied to attorney's fees (again, without supporting documentation).[11]

Lucia suggests that Respondent may have also found that there was a risk of abduction under subsection (a) because the evidence supports a finding that Axel is unemployed and that he insisted on the renewal of A.J.'s passport. *See* TEX. FAM. CODE ANN. § 153.502(a)(3), (4)(G). However, Respondent did not include either of these risk factors within her findings of fact, and we will not deem findings on either factor. *See Vickery v. Comm'n for Lawyer Discipline*, 5 S.W.3d 241, 252 (Tex. App.—Houston [14th Dist.] 1999, pet. denied) (if ground of recovery is entirely omitted from findings, "the omission is deemed to be deliberate").

Viewed in the light most favorable to the decision, the evidence that Axel had "recently engaged in planning activities that could facilitate [A.J.'s] removal" by liquidating the office building could be considered "credible evidence of a risk of abduction." *See* TEX. FAM. CODE ANN. § 153.502(a)(4)(E), (b). Therefore, Respondent was then required[12] to consider whether Axel "has strong familial, emotional, or

---

[11]     Axel references some of Respondent's findings which he contends are indicative of Respondent shifting the burden of proof to him even though Lucia as movant had the burden of proof in the hearing. Here, where we note Axel's failure to offer evidence, we observe that Lucia made a prima facie showing in this regard by showing that he had liquidated a substantial asset. *See* TEX. FAM. CODE ANN. § 153.502(a)(4)(E) (Vernon Supp. 2008). When she made this showing, it then became incumbent upon Axel to produce evidence that the proceeds "could [not] facilitate the removal of the child from the United States." *Id.*; *see Griffin Indus., Inc. v. Thirteenth Court of Appeals*, 934 S.W.2d 349, 352 (Tex. 1996) (orig. proceeding) ("To overcome a prima facie showing, an opposing party must offer evidence to rebut what has been established."); *see also* BLACK'S LAW DICTIONARY 1228 (8th ed. 2004) (defining "prima facie" as "[s]ufficient to establish a fact or raise a presumption unless disproved or rebutted").

[12]     According to subsection (b), if the court finds "credible evidence of a risk of abduction" under subsection (a), then "the court *shall* also consider evidence" regarding the two factors listed in subsection (b). TEX. FAM. CODE ANN. § 153.502(b) (emphasis added). Use of the term "shall" "imposes a duty" on the court to consider such evidence. *See* TEX. GOV'T CODE ANN. § 311.016(2) (Vernon 2005).

cultural ties to another country" or lacked strong ties to the United States. *Id.* § 153.502(b); *see Karenev*, 2008 WL 755285, at *2; *Boyo*, 196 S.W.3d at 423.

In connection with the factors listed in subsection (b), the comment to section 7 of the UCAPA states, "Courts should consider evidence that the respondent was raised in another country and has family support there, has a legal right to work in a foreign country, and has the ability to speak that foreign language." UNIF. CHILD ABUSE PREVENTION ACT § 7 cmt., 9 Part IA U.L.A. at 42. The UCAPA does vary from the Texas statute by referring to "strong familial, financial, emotional, or cultural ties," while subsection (b) of the Texas statute likewise refers to "strong familial, emotional, or cultural ties" but omits any reference to "financial ties." *Compare* UNIF. CHILD ABUSE PREVENTION ACT § 7(a)(6), (7), 9 Part IA U.L.A. at 41 *with* TEX. FAM. CODE ANN. § 153.502(b). Instead, it appears that the Texas statute includes such financial considerations as one of the initial factors under subsection (a). *See* TEX. FAM. CODE ANN. § 153.502(a)(3).[13] Thus, we modify the approach set out in the UCAPA comment by focusing on "evidence that the respondent was raised in another country and has family support there, . . . and has the ability to speak that foreign language." *See* UNIF. CHILD ABUSE PREVENTION ACT § 7 cmt., 9 Part IA U.L.A. at 42.

---

[13] Subsection (a)(3) directs the court to consider evidence that the parent "lacks financial reason to stay in the United States, including evidence that the parent is financially independent, is able to work outside of the United States, or is unemployed." TEX. FAM. CODE ANN. § 153.502(a)(3) (Vernon Supp. 2008).

In this regard, Lucia testified Axel has cousins in Austria.[14] The record is replete with references to Axel's frequent trips to Mexico. He speaks several foreign languages including Spanish and German. Viewed in the light most favorable to the decision, this evidence supports Respondent's finding that Axel "has strong familial, emotional, or cultural ties to another country." *See* TEX. FAM. CODE ANN. § 153.502(b)(1).

And because Respondent found "credible evidence of a risk of abduction" under the subsection (a) factors, she could also consider evidence relevant to the factors listed under subsection (c). *Id.* § 153.502(c); *see Boyo*, 196 S.W.3d at 424.

Respondent's order includes affirmative findings under subdivisions (4)(A), (B), (C), (E), and (J) of subsection (c). The only evidence offered to support these findings is Lucia's generalized testimony that she would be "just out of luck" if Axel took A.J. to a foreign country and, if she liquidated her assets, she "may or may not be able to recover [her] child."

Nonetheless, the majority of the affirmative findings under subsection (c) appear to be matters of legislative fact of which Respondent could take judicial notice *sua sponte*.[15] Rule of Evidence 201 "governs only judicial notice of adjudicative facts." TEX. R. EVID. 201(a). As Professor Wellborn has explained, matters of legislative fact or of other non-adjudicative fact are subject to judicial notice but are not governed by Rule

---

[14] Lucia contends in her mandamus response that Axel "is a naturalized citizen" and by inference was born in Austria, but there is no evidence in the record to support this assertion.

[15] There is a twenty-three day gap between the date of the hearing and the date Respondent signed the order. It is entirely plausible that Respondent conducted additional research *sua sponte* to find relevant information regarding Austria and Mexico. Assuming she did, it would have been helpful to the parties for her to advise them of the sources she relied on to make her findings.

201.  *See* 1 STEVEN GOODE ET AL., GUIDE TO THE TEXAS RULES OF EVIDENCE § 201.1 (3d ed. 2002); *see also In re Graves*, 217 S.W.3d 744, 750 (Tex. App.—Waco 2007, orig. proceeding).  "Legislative facts . . . are not normally the objects of evidentiary proof. As to them, judicial notice instead of record evidence is the rule rather than the exception, and indisputability is not required to justify judicial notice."  *Graves*, 217 S.W.3d at 750 (quoting GOODE § 201.2).

Evidence regarding the legal practices and procedures of a foreign country are legislative facts.  *See Rodriguez v. State*, 90 S.W.3d 340, 360 (Tex. App.—El Paso 2001, pet. ref'd) ("The ability or inability to subpoena witnesses or documents from Mexico is a legislative fact regarding the content of law and policy.");  *see also* GOODE § 203.1 ("international law is subject to judicial notice as a matter of common law") (citing *Skiriotes v. Florida*, 313 U.S. 69, 73, 61 S. Ct. 924, 927, 85 L. Ed. 1193 (1941)).  *But cf.* TEX. R. EVID. 203 (providing method for party to have court take judicial notice of laws of foreign nation).  Accordingly, we hold that facts regarding another country's compliance with the Hague Convention on the Civil Aspects of International Child Abduction, or whether that country poses obstacles to the prompt return of a child taken there or poses risks to the child's safety are legislative facts about which a trial or appellate court may take judicial notice without prompting by the parties.[16]  *See* GOODE § 201.2 (with regard to judicial notice of legislative facts, a court "may employ whatever facts [it] reasonably believe[s], without any requirements of indisputability or of

---

[16]       Nevertheless, the parties in such proceedings should be encouraged to offer evidence relevant to the practices and procedures of other nations.  *Cf.* TEX. R. EVID. 203 (procedure for requesting court to take judicial notice of laws of a foreign nation).

opportunity of parties to be heard concerning such beliefs"); *see also Dutton v. Dutton*, 18 S.W.3d 849, 856 (Tex. App.—Eastland 2000, pet. denied) ("This court may take judicial notice, even if no one requested the trial court to do so and even if the trial court did not announce that it would do so."); *cf. Trujillo v. State*, 809 S.W.2d 593, 595-96 (Tex. App.— San Antonio 1991, no pet.) (trial court "could have easily rejected any inadmissible testimony by the school teacher and taken judicial notice that Edgewood High School is an accredited school by the state education agency").

Respondent found that "Austria and/or Mexico":

(1)     have no legal mechanisms for the immediate and effective enforcement of a child custody order;

(2)     have local laws or practices that would:

(a) enable Axel to prevent Lucia from contacting A.J. without due cause;

(b) restrict Lucia from freely traveling to or exiting from the country because of gender, nationality, or religion; and

(c) restrict A.J.'s ability to legally leave the country when she reaches the age of majority because of gender, nationality, or religion;

Respondent further found that Mexico in particular: (1) is a country for which the State Department has issued a travel warning to U.S. citizens; and (2) poses a risk to A.J.'s physical health and safety because of her specific circumstances and because of "human rights violations committed against children, including child labor and lack of child abuse laws." Although Respondent's initial findings in this regard focused on "Austria

and/or Mexico," we will limit our focus to Mexico in view of the more specific findings she made.

The website for the State Department provides helpful resources regarding international travel and the pertinent practices and procedures of other nations.[17]  *See* UNIF. CHILD ABUSE PREVENTION ACT § 7 cmt., 9 Part IA U.L.A. at 42.  According to information about Mexico in the International Parental Child Abduction section of the website, Mexico is a signatory to the Hague Convention but "[t]ime delays can be a problem in Hague Convention cases in Mexico."  U.S. DEP'T OF STATE, INTERNATIONAL PARENTAL CHILD ABDUCTION: MEXICO, http://travel.state.gov/family/abduction/ country/country_508.html (last visited Oct. 30, 2008).  The State Department also reports that Hague Convention decisions can be appealed by direct appeal or by a separate proceeding called an amparo.  "Several cases have been delayed for years while amparos and appeals of decisions have blocked the case." *Id.*

Under the international travel information section of the State Department's website, additional "country specific information" is provided.  U.S. DEP'T OF STATE, COUNTRY SPECIFIC INFORMATION: MEXICO, http://travel.state.gov/travel/cis_pa_tw/ cis/cis_970.html (2008).  This internet document provides the following information relevant to the issues in this case:

- "Sporadic outbursts of politically motivated violence occur from time to time in certain areas of the country, particularly in the southern states of Chiapas, Guerrero and Oaxaca."

---

[17]  *See* U.S. DEP'T OF STATE, WELCOME TO TRAVEL.STATE.GOV, http://travel.state.gov/ (last visited Oct. 30, 2008).

- In the State of Chiapas,[18] "Armed rebels and armed civilian groups are present in some areas of the state, and there is often no effective law enforcement or police protection. Violent criminal gang activity along the state's southern border—mostly aimed at illegal migrants—continues to be a concern."

- "Crime in Mexico continues at high levels, and it is often violent"

- "Women traveling alone are especially vulnerable"

- Kidnapping "continues at alarming rates"

- "Some border cities have seen an increase in violence over the past year, some of which has been directed against U.S. citizens."

- "Mexican authorities have failed to prosecute numerous crimes committed against U.S. citizens"

- "Mexico is not in full compliance with the [Hague] Convention."

*Id.*

The State Department has also issued a travel alert regarding Mexico which contains similar information about violent crime and kidnappings in Mexico and warning of particular dangers to U.S. citizens. *See* U.S. DEP'T OF STATE, TRAVEL ALERT: MEXICO, http://travel.state.gov/travel/cis_pa_tw/pa/pa_3028.html (2008).

Finally, the State Department has reported that "Mexico is a source, transit and destination country of women and children trafficked for the purpose of sexual exploitation." U.S. DEP'T OF STATE, VICTIMS OF TRAFFICKING AND VIOLENCE PROTECTION ACT 2000: TRAFFICKING IN PERSONS REPORT 75 (2002), http://www.state.gov/documents /organization/10815.pdf.

---

[18] The record contains no evidence of the particular areas in Mexico where Axel travels when there.

Viewing this information in the light most favorable to the decision, this information supports Respondent's findings under subsection (c) concerning the obstacles and risks which may be posed if Axel were to abduct A.J. to Mexico. *See* TEX. FAM. CODE ANN. § 153.502(c)(4)(A), (B), (C), (E), (J).

*Summary*

Viewed in the light most favorable to Respondent's decision, the evidence and the information of which we have taken judicial notice supports Respondent's finding of a potential risk of international abduction. *See Karenev*, 2008 WL 755285, at *2-3; *Boyo*, 196 S.W.3d at 423-24.

**Best Interest of the Child**

When deciding whether to impose abduction prevention measures, a court is also required to consider the best interest of the child. TEX. FAM. CODE ANN. § 153.501(b)(1); *see also id.* § 153.002 (Vernon 2002). Here, Respondent found that "it is not in the child's best interest [for Axel] to have unsupervised possession and access to the child."

The primary factors to consider when evaluating whether abduction prevention measures are in the best interest of the child are the familiar *Holley* factors, which include:

> (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent which may

indicate that the existing parent-child relationship is not a proper one; and
(9) any excuse for the acts or omissions of the parent.

*Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976); *In re T.N.F.*, 205 S.W.3d 625, 632 (Tex. App.—Waco 2006, pet. denied). These factors are not exhaustive and need not all be proved as a condition precedent to imposition of such measures. *See In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002); *T.N.F.*, 205 S.W.3d at 632.

*Emotional and Physical Danger to Child*

We have already discussed the evidence regarding the potential danger posed if A.J. were abducted to Mexico. In addition, Lucia testified that Axel told her on several occasions that he was concerned about threats to the safety of Lucia and A.J. This concern was expressly referenced in their divorce petition. Only a few months before the hearing, he showed Lucia the additional collection of weapons he had added to his arsenal for protection. Lucia testified that threats to the three of them were "a constant topic of conversation." Axel conceded that there were some threats to his own safety but opined that Lucia's view of the threats to herself or A.J. were exaggerated. Because Respondent could (and did) assess the credibility of the witnesses, it was within her discretion to conclude that the threat of danger to A.J. justified the imposition of abduction prevention measures.

*Stability of Home*

Lucia testified and Axel did not dispute that he rarely spends any extended time with A.J. His business requires him to travel frequently. Lucia on the other hand has

borne primary responsibility for A.J.'s nurture and care. Thus, the evidence relating to this factor supports the imposition of abduction prevention measures.

*Acts and Omissions*

The evidence concerning the parties' acts and omissions relative to A.J. is similar to the evidence concerning the stability of their respective homes. In addition, Lucia presented evidence to suggest that Axel has acted with deception in seeking a divorce. Finally, she presented evidence that he recently urged the renewal of A.J.'s passport and pressed for the inclusion in the divorce decree of a provision granting him the "[r]ight to accompany all of [A.J.'s] domestic and world-wide travel."[19] Therefore, the evidence relating to this factor supports the imposition of abduction prevention measures.

*Excuses for Acts and Omissions*

Axel presented evidence (which Lucia does not dispute) that the demands of his business interests are the primary reason he is unable to spend more time with A.J. However, it was within Respondent's discretion to determine whether this is a reasonable excuse, particularly in light of the emphasis on what is in A.J.'s best interest. Thus, the evidence relating to this factor neither supports nor contradicts the imposition of abduction prevention measures.

---

[19] This is not among the rights enumerated in the Family Code for parents, managing conservators, or possessory conservators. *See* TEX. FAM. CODE ANN. §§ 153.073, 153.074, 153.132 (Vernon Supp. 2008), § 153.192 (Vernon 2002).

*Summary*

The record contains no evidence pertinent to the other factors.[20]  But viewed in the light most favorable to the decision, the evidence concerning the four factors we have addressed supports Respondent's decision to impose abduction prevention measures.

**Public Policy**

A court must also consider "the public policies of this state described by Section 153.001(a)."  TEX. FAM. CODE ANN. § 153.501(b)(1).  Section 153.001(a) provides:

> The public policy of this state is to:
>
> (1) assure that children will have frequent and continuing contact with parents who have shown the ability to act in the best interest of the child;
>
> (2) provide a safe, stable, and nonviolent environment for the child; and
>
> (3) encourage parents to share in the rights and duties of raising their child after the parents have separated or dissolved their marriage.

*Id.* § 153.001(a) (Vernon 2002).

Although these policies must be *considered*, they are only one of the factors enumerated for consideration in determining whether to impose abduction prevention measures.  *See id.* § 153.501(b).  Therefore, "slavish adherence" to these policies may not be warranted when the other factors dictate that abduction prevention measures are

---

[20]     These other factors are: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the parental abilities of the individuals seeking custody; (4) the programs available to assist these individuals to promote the best interest of the child; and (5) the plans for the child by these individuals or by the agency seeking custody.  *See Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976); *In re T.N.F.*, 205 S.W.3d 625, 632 (Tex. App.—Waco 2006, pet. denied).

necessary. *See Echols v. Olivarez*, 85 S.W.3d 475, 480 (Tex. App.—Austin 2002, no pet.) ("in the context of relocation cases, slavish adherence to such policy [of frequent and continuous contact] ignores the realities of a family that has been dissolved").

From the language of the statute itself, this state's public policy is to assure "frequent and continuing contact" between children and "parents who have shown the ability to act in the best interest of the child." TEX. FAM. CODE ANN. § 153.001(a)(1); *In re R.D.Y.*, 51 S.W.3d 314, 323 (Tex. App.—Houston [1st Dist.] 2001, pet. denied).

Viewed in the light most favorable to the decision, the evidence supports a conclusion that Axel has *not* shown the ability to act in A.J.'s best interest. *Cf. In re M.J.*, 227 S.W.3d 786, 793 (Tex. App.—Dallas 2006, no pet.) (father's relocation of children to Bangladesh in violation of divorce decree and fact that remaining in Bangladesh may endanger children supported finding that appointment of mother as sole managing conservator was in the children's best interest and did not violate public policy).

Nonetheless, Axel cites *Thompson v. Thompson*, 827 S.W.2d 563, 569 (Tex. App.— Corpus Christi 1992, writ denied), for the proposition that his right to periodic visitation should not be denied "except in an extreme case of parental unfitness." We agree that any unusual restrictions on parental access to a child must be justified by clear and convincing evidence under the law, but the nature of the laws governing the parent-child relationship has changed dramatically in the last fifteen years. *Cf. Echols*, 85 S.W.3d at 480.

The requirement of "parental unfitness" is still repeated in more recent cases involving termination of parental rights or cases in which a nonparent is seeking

appointment as conservator of a child over a parent. *See, e.g., In re B.L.D.*, 113 S.W.3d 340, 353 (Tex. 2003); *In re S.W.H.*, 72 S.W.3d 772, 778 (Tex. App.—Fort Worth 2002, no pet.). Here, however, Lucia is not seeking to eliminate Axel's access to A.J.. Instead, she is seeking restrictions consonant with A.J.'s best interest.

The statutes governing international parental abduction specify the showing which must be made to obtain abduction prevention measures in a suit affecting the parent-child relationship. And public policy considerations are a part of that analysis. *See* TEX. FAM. CODE ANN. § 153.501(b)(1). However, even the constitutional rights of a parent must sometimes bow to the best interest of the child or other statutory considerations. *See, e.g., In re C.R.O.*, 96 S.W.3d 442, 452 (Tex. App.—Amarillo 2002, pet. denied) (domicile restriction was consistent with public policy because it encouraged father's continuing contact with children and did not infringe on mother's constitutional right to travel).

Regarding the other two public policy considerations, the evidence shows that Lucia is presently better able to provide A.J. with "a safe, stable, and nonviolent environment." *See* TEX. FAM. CODE ANN. § 153.001(a)(2). And Respondent appears to be encouraging Axel and Lucia to "share in the rights and duties of raising" A.J. by allowing Axel to have visitation rights, albeit with restrictions. *Id.* § 153.001(a)(3); *see Lenz v. Lenz*, 79 S.W.3d 10, 18 (Tex. 2002) (because father had ability to visit children in Germany, custody order allowing mother to relocate to Germany would allow father and mother "to continue sharing the rights and duties of raising their two children").

Accordingly, we find that Respondent's order is consistent with the public policy of this state as expressed in section 153.001.

## Other Considerations

In addition, section 153.501(b) requires a court to consider: (1) obstacles to the return of the child if abducted and (2) potential harm to the child if abducted. TEX. FAM. CODE ANN. § 153.501(b)(3), (4). We have already addressed the evidence relevant to these issues and have concluded that such evidence supports the imposition of abduction prevention measures.

## Least Restrictive Means

Axel also argues that, even assuming some abduction prevention measure is warranted, Respondent abused her discretion by failing to consider the least restrictive means available. The comment to section 8 of the UCAPA encourages courts to employ the least restrictive means.

"Ideally the court will choose the least restrictive measures and conditions to maximize opportunities for continued parental contact while minimizing the opportunities for abduction." UNIF. CHILD ABUSE PREVENTION ACT § 8 cmt., 9 Part IA U.L.A. at 44.

We agree in principle that a court should employ the least restrictive means available to prevent abduction so that parental rights are not unreasonably restricted. However, section 153.503 is written more broadly than section 8 of the UCAPA and thus vests a trial court with broad discretion in determining which preventive measures to impose. *Compare* TEX. FAM. CODE ANN. § 153.503 ("the court may take *any* of the

following actions") (emphasis added) *with* UNIF. CHILD ABUSE PREVENTION ACT § 8(c), 9 Part IA U.L.A. at 43 ("[a]n abduction prevention order may include one or more of the following").

As the comment to section 8 of the UCAPA notes, "The most common, and one of the most effective, restrictions is supervised visitation. Visitation should remain supervised until the court decides the threat of abduction has passed." UNIF. CHILD ABUSE PREVENTION ACT § 8 cmt., 9 Part IA U.L.A. at 45.

Accordingly, we cannot say that Respondent abused her discretion by ordering supervised visitation as an abduction prevention measure under section 153.503.

## Summary

Viewed in the light most favorable to Respondent's findings, the evidence and information before us support findings that: (1) Axel poses a potential risk of international abduction; (2) there are obstacles to locating, recovering and returning A.J. to the United States were she abducted to Mexico; (3) there is a potential for harm to A.J. were she abducted to Mexico; and (4) it is in A.J.'s best interest to impose an abduction prevention measure. In addition, we hold that Respondent's order is consistent with "the public policies of this state described by Section 153.001(a)." Accordingly, Respondent did not abuse her discretion by requiring supervised visitation.

## REMOVAL OF RESPONDENT

Axel asks this Court to replace Respondent with another judge because she stated in her findings that she found him "to be 'not credible' and 'evasive'" and she "cannot rely on [him] to tell the truth."

A trial judge may be removed from presiding over a particular case for one of three reasons: (1) disqualification under article V, section 11 of the Texas Constitution; (2) disqualification under section 74.053 of the Government Code (applicable to assigned judges); or (3) recusal under the procedural rules for civil trials and appeals. *See In re Union Pac. Res. Co.*, 969 S.W.2d 427, 428 (Tex. 1998) (orig. proceeding); *Spigener v. Wallis*, 80 S.W.3d 174, 179 (Tex. App.—Waco 2002, no pet.). Here, Axel's complaint presents a potential ground for recusal under Rule of Civil Procedure 18b. *See* TEX. R. CIV. P. 18b(2)(b).

Rule 18a provides the procedures for pursuing recusal of a trial judge. *Id.* 18a. Insofar as we are aware, Axel has not filed a motion to recuse Respondent. If he has, Rule 18a(f) prescribes the appellate remedy. "If the motion is denied, it may be reviewed for abuse of discretion on appeal from the final judgment. If the motion is granted, the order shall not be reviewable, and the presiding judge shall assign another judge to sit in the case." *Id.* 18a(f).

Because Axel has an adequate legal remedy, he is not entitled to mandamus relief in connection with his efforts to have Respondent removed from the case. *See Union Pac. Res. Co.*, 969 S.W.2d at 428-29.

**CONCLUSION**

Respondent did not abuse her discretion by requiring supervised visitation. Because Axel could pursue an interlocutory appeal from Respondent's temporary injunction prohibiting him from disposing of any assets until a hearing on the bill of

review, the injunction may not be challenged by mandamus.  Nor is mandamus review available in connection with Axel's efforts to have Respondent removed from the case.

Accordingly, we deny Axel's petition for writ of mandamus.


                          FELIPE REYNA
                          Justice

Before Chief Justice Gray,
     Justice Vance, and
     Justice Reyna
     (Chief Justice Gray concurring with note)*
Petition denied
Opinion delivered and filed November 5, 2008
[OT06]

*     (Chief Justice Gray would deny the petition without an opinion.  When reviewing an interim action by a trial court, it is not a particularly good time to explore and discuss a relatively new area of the law.  This is true primarily because the nature of the proceeding leaves the record less than fully developed.  Further, he joins no part of the opinion and expressly disagrees with the discussions of the standard of review and taking judicial notice of the laws of another country and a tour of the State Department's web page on Mexico.  A separate opinion will not issue.)