COURT OF APPEALS

                                       SECOND DISTRICT OF TEXAS

                                                   FORT WORTH

 

 

                                        NO. 2-09-203-CV

 

 

IN THE INTEREST OF M.M.M., A CHILD                                                   

 

 

                                                                                                        

 

                                              ------------

 

           FROM THE 323RD
DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

In two issues, J.M. (Father) appeals portions of
the trial court=s
order that appointed E.M. (Mother) as the sole managing conservator of their
daughter, M.M.M.[1]  We affirm.

Background
Facts








On August 4, 2008, two days after M.M.M.=s birth, the Texas Department of Family and
Protective Services (the Department) filed a petition for her protection and
conservatorship.  An affidavit attached
to the petition related that Mother had erratic behavior at the hospital before
and after giving birth to M.M.M. and that Father did not have stable housing or
a well-paying job.  The affidavit
asserted that Mother=s
behavior was caused by her refusal to take medication for her apparent mental
problems.  The trial court initially
authorized M.M.M.=s
removal from her parents=
care and named the Department as M.M.M.=s temporary sole managing conservator.

In September, the Department filed a Family
Service Plan that required the parents to (among other things) comply with
mental health and medication recommendations and participate in parenting
classes and individual counseling. That same month, the trial court ordered the
parents to complete these tasks and named them as M.M.M.=s temporary possessory conservators.

The trial court eventually returned M.M.M. to her
parents= care. In January 2009, the Department filed
another Family Service Plan that contained several other tasks for the parents
to complete.  In February, the Department
filed a motion that requested that temporary possessory conservatorship be
removed from Father and remain solely with Mother because Father had been
arrested for assaulting Mother.  The
trial court granted the Department=s motion and limited Father=s visitation of M.M.M. to occasions agreed to and
arranged by the Department.








The trial of M.M.M.=s conservatorship issues occurred in July.  Following the trial, the court removed M.M.M.=s conservatorship from the Department and, under
the parties=
agreement that was announced at trial, appointed Mother as her permanent sole
managing conservator and Father as her possessory conservator.  The trial court=s order allowed Mother to establish M.M.M.=s residence without any geographic restriction
and stated that Father Ashall
have NO unsupervised visits at this time due to his failure to follow the
[Department=s]
service plan, failure to support the child[,] and his history of family
violence.@  The issues of a lack of a geographic
restriction on M.M.M.=s
residence and of Father=s
supervised access to her were not part of the parties= agreement; these issues were contested at
trial.  Father filed his notice of
appeal.

Father=s Issues on Appeal

In two issues, Father argues that the trial court
erred by not geographically restricting M.M.M.=s domicile and by requiring that his visitation
with her be supervised.

Standard
of review








We review the trial court=s decisions on custody, control, possession, and
visitation matters for an abuse of discretion. 
See Gillespie v. Gillespie, 644 S.W.2d 449, 451 (Tex. 1982); In re
M.P.B., 257 S.W.3d 804, 811 (Tex. App.CDallas 2008, no pet.); In re W.M.,
172 S.W.3d 718, 724 (Tex. App.CFort Worth 2005, no pet.) (adding that the trial
court has Awide
latitude in determining the best interests of a minor child@).

To determine whether a trial court abused its
discretion, we must decide whether the court acted without reference to any
guiding rules or principles; in other words, we must decide whether the act was
arbitrary or unreasonable. Low v. Henry, 221 S.W.3d 609, 614
(Tex. 2007); Cire v. Cummings, 134 S.W.3d 835, 838B39 (Tex. 2004); W.M., 172 S.W.3d at
725.  An appellate court cannot conclude
that a trial court abused its discretion merely because the appellate court
would have ruled differently in the same circumstances. E.I. du Pont de
Nemours & Co. v. Robinson, 923 S.W.2d 549, 558 (Tex. 1995); see Low,
221 S.W.3d at 620.








An abuse of discretion does not occur when the
trial court bases its decisions on conflicting evidence.  In re Barber, 982 S.W.2d 364, 366
(Tex. 1998) (orig. proceeding). 
Furthermore, an abuse of discretion does not occur as long as some
evidence of substantive and probative character exists to support the trial
court=s decision. 
Butnaru v. Ford Motor Co., 84 S.W.3d 198, 211 (Tex. 2002); W.M.,
172 S.W.3d at 725.  We must be cognizant
that the trial court is in a better position to decide custody cases because @it faced the parties and their witnesses,
observed their demeanor, and had the opportunity to evaluate the claims made by
each parent.@  In re J.R.D., 169 S.W.3d 740, 743
(Tex. App.CAustin
2005, pet. denied).

In our review of a child custody ruling under the
abuse of discretion standard, legal and factual sufficiency are not independent
grounds of error but are relevant factors in deciding whether the trial court
abused its discretion. In re T.D.C., 91 S.W.3d 865, 872 (Tex. App.CFort Worth 2002, pet. denied) (op. on reh=g); see W.M., 172 S.W.3d at 725.  In determining whether there has been an
abuse of discretion because the evidence is legally or factually insufficient
to support the trial court=s decision, we consider whether the trial court
had sufficient information upon which to exercise its discretion and whether it
erred in its application of that discretion. 
W.M., 172 S.W.3d at 725; T.D.C., 91 S.W.3d at 872.  AThe traditional sufficiency review comes into
play with regard to the first question. 
With regard to the second question, we determine, based on the elicited
evidence, whether the trial court made a reasonable decision.@  W.M.,
172 S.W.3d at 725 (footnote omitted).

Mother=s unrestricted right to determine M.M.M.=s domicile 

In his first issue, Father contends that the
trial court erred by failing to restrict M.M.M.=s domicile to a specific geographic area.  This issue arises because Mother testified at
trial that she wanted to move to California, where she was born and where her
parents live.








The law on residency restrictions

Texas does not have any specific statute
regarding residency restrictions in custody cases.  See Lenz v. Lenz, 79 S.W.3d 10, 14
(Tex. 2002). However, unless limited by court order, a sole managing
conservator, such as Mother, has the exclusive right to designate the primary
residence of a child. Tex. Fam. Code Ann. ' 153.132(1) (Vernon 2008); see In re A.S.,
298 S.W.3d 834, 836 (Tex. App.CAmarillo 2009, no pet.).  Also, it is the public policy of this state to
assure that a child will have frequent and continuing contact with parents who
have shown the ability to act in the child=s best interest; to provide a safe, stable, and
nonviolent environment for the child; and to encourage parents to share in the
rights and duties of raising their child after the parents have separated or
dissolved their marriage.  Tex. Fam.
Code Ann. ' 153.001(a)
(Vernon 2008).  The best interest of the
child is always the primary consideration in resolving issues of
conservatorship, possession, and access concerning a child.  Id. ' 153.002 (Vernon 2008); Lenz, 79
S.W.3d at 14.   








As the Amarillo Court of Appeals recently
explained, it is Abeyond
question@ that the desire of a sole managing conservator
to move away from Texas may affect the statutory goal of continuing contact
with a noncustodial parent.  A.S.,
298 S.W.3d at 836.  However, A[b]ecause the custodial parent provides the child
with a basic quality of life, a child=s best interest is closely intertwined with the
well‑being of the custodial parent.@  Lenz,
79 S.W.3d at 18; see Echols v. Olivarez, 85 S.W.3d 475, 476, 482 (Tex.
App.CAustin 2002, no pet.) (affirming the trial court=s decision to allow a child=s mother to move with the child to Tennessee so
that she could take a higher paying job and explaining that courts must Aprimarily concentrate on the general quality of
life for both the child and the custodial parent in assessing whether a change
is positive and in the child=s best interest@); see also Sanchez v. Sanchez, No.
04‑06‑00469‑CV, 2007 WL 1888343, at *3B4 (Tex. App.CSan Antonio July 3, 2007, pet. denied) (mem. op.)
(stating that ordering a residency restriction Ais within the trial court=s discretion based on the best interest of the
child@ and holding that the trial court=s decision to not impose the restriction
requested by the father and to allow the mother to move to Mississippi was not
an abuse of discretion), cert. denied, 129 S. Ct. 71 (2008). 








Father=s analysis in his brief solely concerns five
factors for geographic restrictions that arise from decisions in other
jurisdictions and that were discussed in the Lenz opinion:  (1) the reasons for and against the move, (2)
the effect on extended family relationships, (3) the effect on visitation and
communication with the noncustodial parent to maintain a full and continuous
relationship with the child, (4) the possibility of a visitation schedule
allowing the continuation of a meaningful relationship between the noncustodial
parent and the child, and (5) the nature of the child=s existing contact with both parents, and the
child=s age, community ties, and health and educational
needs. See Lenz, 79 S.W.3d at 15B16. 
However, the supreme court stated that while these factors (which were
not the only factors discussed in the opinion) Amay assist [courts] in giving meaning to our best‑interest
standard in the relocation context,@ it also indicated that there are no formulaic,
bright-line tests in geographic restriction cases.  Id. at 19. 

Analysis








The record establishes the turbulent history of
Father=s and Mother=s marriage, which was apparently drawing to an
end because Father had filed for divorce at the time of trial.  According to Mother, she and Father met in
California in 2001.  Since that time,
Father has been arrested multiple times for assaulting Mother.[2]  Specifically, Father=s testimony established that he was arrested for
throwing a phone at Mother when they were not yet married, that he was arrested
in 2007 based on another incident involving Mother, and that he was convicted
for an assault that occurred in December 2008, while this case was pending in
the trial court.  Father said that the
2008 assault occurred during an argument about M.M.M. traveling to California
and that in the midst of pushing and shoving between him and Mother, he Agrabbed her arm.@

Father testified that the case arising from his
2007 assault arrest was dismissed.  He
said that the 2008 assault was precipitated by Mother=s throwing a cup of hot noodles on him and that
Mother assaulted him on the day before trial by hitting him and scratching him
with her nails.  Mother said that she did
not see Father the day before trial.

Father was sentenced to forty-five days= confinement as his punishment for the December
2008 assault.  Although Father and Mother
stopped living together after the assault occurred, according to Mother, Father=s inappropriate acts toward her were continuing
at the time of trial, because during one of Father=s visits with M.M.M. about a week before trial,
he stole her cell phone and would not return it to her despite her telling him
that she needed the phone to call for help if M.M.M. had an emergency.








Father took a battery intervention class while he
was in jail for assaulting Mother. 
However, Mother testified that when Father came to visit M.M.M. about a
week before trial and discovered that Mother was dating someone, he threatened
to kill her.[3]  Mother testified that Father=s threat caused her desire to move away Aas soon as possible.@

Mother testified about the benefits of her
proposed move.[4]  She said that

she
did not have any support system in Texas and that in California, she could stay
at her mother=s
home with M.M.M. for a year while she looked for a job. She said that her
mother supports her financially.[5]  She proposed that Father could visit M.M.M.
in California Awhenever
he wants to@
and that Mother could travel with M.M.M. to see Father in Texas.  She said that she would pay for trips to
Texas so that M.M.M. could see Father but that she would not pay for Father=s trips to California to see M.M.M.








Father said that Mother=s parents in California are Avery honorable people.@  However,
he said that money would be a barrier to his visiting M.M.M. if she lived in
California and that he would not be able to have a relationship with her if she
lived there.  Father testified that he
has Anever stopped seeing [M.M.M.] since she=s been born,@ and he specified that M.M.M. even saw him during
the approximately fifteen days that he was in jail because of his assault
conviction.  Father said that he and his
family went to visit M.M.M. just days before trial.  Although Mother said that the visit was the
first time that Father=s
father had ever seen M.M.M., she acknowledged that Father=s mother and aunt had visited M.M.M. before.  

However, some of Father=s actions belie his stated desire to remain
active in M.M.M.=s
life.  For instance, although Father said
that he had bought M.M.M. some diapers and had given Mother about $1,000 to
help with M.M.M.=s
care, Mother said that Father had not bought diapers and had not given her
money in seven months preceding the trial, and the evidence indicated that he
was not likely to support M.M.M. in the near future because he was unemployed.
Also, at the time of trial, Father had not successfully completed any of
the services from the Department=s Family Service Plan.  Finally, Mother testified that when she lived
with Father, he did not give M.M.M. baths and rarely changed her diapers or
gave her bottles because he would Atell [Mother] it=s [her] job.@








Although some of the evidence that is contained
in the record and that is desribed above favors Father=s position, the trial court did not abuse its
discretion by declining to include a geographic restriction in its order
because there is some evidence of substantive and probative character to
favor  allowing Mother to move with
M.M.M. to California.  See Butnaru, 84 S.W.3d at 211; W.M.,
172 S.W.3d at 725.  Specifically, if the
trial court considered Father=s history of assaulting Mother and resolved the
conflicting evidence at trial in Mother=s favor, including determining that Father had
earnestly threatened Mother=s life, then we conclude that it acted reasonably
by allowing Mother and M.M.M. to move so that they could avoid a violent
environment.  See Tex. Fam.
Code Ann. ' 153.001(a)(2)
(providing that the policy of the State is to provide a safe, nonviolent
environment for children); see also In re Rhodes, 293 S.W.3d 342, 344
(Tex. App.CFort
Worth 2009, orig. proceeding) (explaining that as Athe factfinder, the trial court weighs the
evidence and judges a witness=s credibility, and the trial court may accept or
reject any witness=s
testimony in whole or in part@); In re R.D.S., 902 S.W.2d 714, 716 (Tex.
App.CAmarillo 1995, no pet.) (AThe appellate court must recall that the trier of
fact has the authority to weigh the evidence, draw reasonable inferences
therefrom, and choose between conflicting inferences.@). 








Next, the trial court could have reasonably
concluded that although Father saw M.M.M. regularly, his failure to support
M.M.M. financially (if Mother=s testimony is true) and his failure to complete
any of his service plan showed that he did not have the ability to act in her
best interest and that he was therefore not entitled to frequent and continuing
contact with her.  See Tex. Fam.
Code Ann. ' 153.001(a)(1).  The trial court could have also reasonably
found that Mother=s
increased support structure in California would enable her to better provide
for M.M.M.=s
needs.  And although Mother=s proposed move to California means that Father
and his family might see M.M.M. less than they otherwise would,[6]
Mother agreed to travel to Texas at her expense so that M.M.M. could visit
them, and the move to California means that M.M.M. can have a greater
connection with Mother=s
parents than she would while living in Texas.








Finally, Father complains that a provision in the
trial court=s
order allows him only to visit M.M.M. Ain Texas (so long as [Mother] resides in Texas)@ and that the order therefore does not grant him
any visitation rights if Mother leaves Texas.[7]  But the record on appeal indicates that
Mother=s move to California is still speculative.  If she does move, Father could seek to modify
the court=s
visitation order at that time.  Thus, we
conclude that the trial court=s decision to not geographically restrict M.M.M.=s domicile should not be reversed.   

For all of these reasons, we conclude that the
trial court did not abuse its discretion by declining to include a geographic
restriction on M.M.M.=s
domicile, and we overrule Father=s first issue.

The
requirement that Father=s visitation be supervised

In his second issue, Father contends that the
trial court abused its discretion by ordering that his visitation with M.M.M.
must be supervised.

Section 153.004 of the family code

A trial court Ashall consider the commission of family violence
in determining whether to deny, restrict, or limit the possession of a child by
a parent who is appointed as a possessory conservator.@  Tex. Fam.
Code Ann. ' 153.004(c)
(Vernon Supp. 2009); see In re B.N.F., 120 S.W.3d 873, 878 (Tex. App.CFort Worth 2003, no pet.).  A court Amay not allow@ a parent to have access to a child when it is
shown that there is a history family violence during the pendency of the suit
unless the court 

renders a possession order that is designed to
protect the safety and well‑being of the child and any other person who
has been a victim of family violence committed by the parent and that may
include a requirement that: 

 

(A) the
periods of access be continuously supervised by an entity or person chosen by
the court.








Tex.
Fam. Code Ann. ' 153.004(d)(2)(A);
see In re R.T.H., 175 S.W.3d 519, 521 (Tex. App.CFort Worth 2005, no pet.) (explaining that a
single act of violence may constitute a Ahistory@ of  abuse
under section 153.004).  It is a Arebuttable presumption that it is not in the best
interest of a child for a parent to have unsupervised visitation with the child
if credible evidence is presented of a history or pattern of [physical abuse]
by that parent directed against the other parent.@  Tex. Fam.
Code Ann. ' 153.004(e).

Analysis     








Beyond creating her desire to move to California,
Father=s alleged threat to kill Mother and his assaults
on her made her concerned about her safety and M.M.M.=s safety if she had to attend Father=s visits with M.M.M.  If the trial court considered Father=s recent assault of Mother and his pattern of
assaulting her and believed that Father had seriously threatened Mother=s life, we hold that it did not act unreasonably
because supervised visitation at a visitation center was one of the trial court=s options granted by the legislature under those
circumstances.  See Tex. Fam. Code
Ann. ' 153.004(d)(2)(A). Evidence unrelated to
Father=s assaults and threats also supports the trial
court=s supervision decisionCMother said that Father has threatened to abscond
out of state with M.M.M.  See In re
Sigmar, 270 S.W.3d 289, 307 (Tex. App.CWaco 2008, orig. proceeding) (holding that the
trial court did not abuse its discretion by ordering supervised visitation as
an abduction prevention measure).

Based on these facts and the other facts recited
above, we hold that there was some evidence of substantive and probative
character for the trial court to find that Father=s supervised visitation was in M.M.M.=s best interests, and we therefore overrule
Father=s second issue.  See Tex. Fam. Code Ann. '' 153.002, .004, .193 (Vernon 2008);
Butnaru, 84 S.W.3d at 211; W.M., 172 S.W.3d at 725.

Conclusion

Having overruled both of Father=s issues, we affirm the trial court=s judgment.

 

TERRIE
LIVINGSTON

JUSTICE

 

PANEL: 
LIVINGSTON, WALKER, and MCCOY, JJ.

 

DELIVERED: 
March 4, 2010











[1]To protect the privacy of the parties involved in this appeal, we
identify them by initials only.  See
Tex. Fam. Code Ann. ' 109.002(d) (Vernon 2008).





[2]Mother said that Father has assaulted her and has been arrested for
doing so four or five times.





[3]Father said that he did not threaten to kill Mother but that he said,
without intending any threat of physical violence, AI don=t know what I would do . . . if I ever found you with another man.@





[4]Although Mother planned to move to California, she indicated that she
would not be able to do so until she had more money and received final approval
about the details of the move from her mother.





[5]Mother has not worked since M.M.M.=s birth, but
every month, she receives $800 from her parents and $650 from social security
insurance based on her bipolar disorder. 
She also receives food stamps, and Father owes her $200 per month for
child support.





[6]Mother conceded that Father would be able to travel to California only
a couple of times a year, but she said that Father could bring his family to
California when he visited.  None of
Father=s family testified about their relationship with M.M.M. or their
desires related to her.  





[7]The order states that Father may visit M.M.M. two Saturdays per month
for an hour on each Saturday.  Father has
not asserted on appeal that the trial court erred in its determination of the
frequency or length of his visits with M.M.M.