

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| MICHAEL MIKHAEL GERGES, | § | No. 08-19-00006-CV |
| Appellant, | § | Appeal from the |
| v. | § | 322nd District Court |
| JENNIFER ELAINE GERGES, | § | of Tarrant County, Texas |
| Appellee. | § | (TC# 322-625953-17) |

## O P I N I O N

This is an appeal from a final divorce decree, following a bench trial, in which the trial court granted a divorce between Appellant Michael Mikhael Gerges (Husband) and Appellee, Jennifer Elaine Gerges (Wife).[1]  The case raises a number of issues, including whether the trial court erred in: (1) partially rejecting Husband's request for an Expanded Standard Possession Order, (2) finding that there was a potential risk of international abduction and issuing international abduction prevention measures, (3) imposing several restrictions on Husband's right to possession of the children, (4) granting the divorce on the basis of adultery, and (5) making an award of attorney's fees to Wife.

We agree with Husband that there was insufficient evidence to support the trial court's

---

[1] This case was transferred to us from the Second Court of Appeals pursuant to the Texas Supreme Court's docket equalization efforts. We apply the precedents from that court where they might conflict with our own. TEX.R.APP.P. 41.3.

1

finding of a potential risk of international abduction, and we therefore conclude that the trial court abused its discretion in issuing a permanent injunction from removing the children beyond the borders of the United States. Accordingly, we dissolve that portion of the trial court's judgment. Finding no abuse of discretion with respect to any of the other issues raised by Husband, we affirm the trial court's judgment in all other respects.

## I. BACKGROUND

The parties were married on June 9, 2010, and have two children from the marriage, J.G. and L.G., born in 2011 and 2015. The parents separated in May of 2016. Wife filed an Original Petition for Divorce, alleging, among other things, that the marriage had become "insupportable because of discord or conflict of personalities," and that Husband had committed "adultery." Husband answered and filed his own counterpetition for divorce. Husband and Wife resolved their property disputes through a mediated settlement agreement. They could not, however, resolve the issues regarding their children. While both parties agreed that they should be named joint managing conservators of their children, each wanted to be named the primary conservator, with the exclusive right to designate the children's primary residence. They tried that and related issues to the trial court.

The trial court entered its Final Decree of Divorce on September 11, 2018. At Husband's request, the trial court entered Findings of Fact and Conclusions of Law. The Decree and findings address five issues germane to this appeal.

### A. The Possession Order

The Decree named the parties as joint managing conservators of their two children and gave Wife the exclusive right to designate the children's primary residence. As explained in more detail below, the trial court partially rejected Husband's timely election for an expanded possession

2

schedule and entered a standard possession order for weekend visitation and for Father's Day. However, Husband was given expanded possession of the children on Thursdays of each week during the regular school term, beginning at the time the children's school was dismissed from school and ending at the time the children's school resumed on Fridays.

## B. The International Abduction Prevention Measures

In her amended petition, Wife asked the trial court "to determine whether there is a risk of international abduction of the children by Respondent and to take such measures as are necessary to protect the children." The trial court found that credible evidence had been presented that there was a "potential risk of . . . international abduction" of the children, and it therefore permanently enjoined both parents from removing the children "beyond the borders of the United States of America or its territories."[2] The trial court also found that it was in the best interest of the children to give Wife the exclusive right to "apply for, renew, and maintain possession of the passports for the children."

## C. Additional Injunctions and Other Restrictions

At Wife's request, the trial court also ordered both parties to give each other 14-days-notice of any intended overnight or out-of-state travel with the children, together with information regarding details of the planned travel, including the location and contact information for where the children would be staying. In addition, at Wife's request, the trial court ordered both parents to allow the other parent to have electronic communication with the children at 7:00 PM each day during their periods of non-possession, finding that it was in the best interest of the children to allow both parents to have "daily electronic/telephonic communication with the children when not

---

[2] Earlier in the Decree, the trial court appeared to allow the parties to engage in international travel, stating that a party who intended to have a child travel outside the United States during a period of the parties' possession was required to provide written notification to the other party of his/her intent within 21 days of the intended travel.

3

in possession of the children."

The trial court also made findings that Husband had a "history" of recording Wife or the faculty or staff of the children's school, and that Husband had a history of leaving a child alone and unsupervised in a motor vehicle. Based on these findings, the trial court permanently enjoined both parties from leaving any child alone and unsupervised in a motor vehicle, and from "[m]aking audio or video recordings of [Wife] or the faculty and staff of the children's school[.]"

### D.  The Adultery Finding

The decree reflects that the trial court granted the parties' divorce "on the grounds of insupportability and adultery by [Husband]," and in its findings, the trial court expressly found that Husband was the parent of a child who had been born to another woman during his marriage to Wife.

### E.  Attorney's Fees

In addition, the trial court granted Wife's request for attorney's fees, and ordered Husband to reimburse Wife for her "reasonable and necessary attorney's fees" in the amount of $10,000.00.

## II.  ISSUES ON APPEAL

In six issues, Husband contends that the trial court abused its discretion by: (1) partially rejecting his election of the Expanded Standard Possession Order, (2) imposing travel restrictions based on the risk of international abduction, (3) granting the divorce on the basis of adultery, (4) granting other unnecessary and unreasonable permanent injunctions, (5) placing unreasonable restrictions on his right to possession of the children, and (6) awarding attorney's fees to Wife. We first consider Husband's issues relating to possession issues, and thereafter consider his remaining arguments in a somewhat different order.

4

## III. APPLICABLE LAW AND STANDARD OF REVIEW IN SAPCR PROCEEDINGS

In determining issues of conservatorship, possession, and access to a child in Suits Affecting the Parent-Child Relationship (SAPCR), the court's primary consideration is the best interest of the child. TEX.FAM.CODE ANN § 153.002. In so deciding, courts generally look to a non-exhaustive list of considerations for determining a child's best interest promulgated by the Texas Supreme Court, commonly referred to as the "*Holley* factors." *See Bates v. Tesar*, 81 S.W.3d 411, 433-35 (Tex.App.--El Paso 2002, no pet.), *citing Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). Included in these factors are: (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *See id*.

In addition, Section 153.001 of the Family Code identifies three relevant public policy concerns when making virtually any child custody decision: "(1) assure that children will have frequent and continuing contact with parents who have shown the ability to act in the best interest of the child; (2) provide a safe, stable, and nonviolent environment for the child; and (3) encourage parents to share in the rights and duties of raising their child after the parents have separated or dissolved their marriage." TEX.FAM.CODE ANN. § 153.001(a)(1)-(3); *see also Lenz v. Lenz*, 79 S.W.3d 10, 14 (Tex. 2002).

Trial courts have wide discretion when deciding matters of custody, control, possession,

support, or visitation, and we review such matters for an abuse of discretion. *In Interest of J.H. III*, 538 S.W.3d 121, 123 (Tex.App.--El Paso 2017, no pet.); *see generally In re Doe 2*, 19 S.W.3d 278, 281 (Tex. 2000) (recognizing that a trial court has broad discretion in determining the best interest of a child in family law matters).

To determine whether a trial court has abused its discretion in a SAPCR proceeding, we engage in a two-pronged inquiry: (1) did the trial court have sufficient information upon which to exercise its discretion; and (2) did the trial court err in its application of discretion. *In re T.M.P.*, 417 S.W.3d 557, 562-63 (Tex.App.--El Paso 2013, no pet.); *see also In Interest of C.M.V.*, 479 S.W.3d 352, 358 (Tex.App.--El Paso 2015, no pet.). We consider challenges to the legal and factual sufficiency as relevant factors in determining whether the trial court had sufficient information upon which to exercise its discretion under the first prong of our analysis, rather than as independent grounds of error. *See Norris v. Norris*, 56 S.W.3d 333, 338 (Tex.App.--El Paso 2001, no pet.); *In Interest of C.M.V.*, 479 S.W.3d at 358. In determining whether there is legally sufficient evidence, we consider the evidence in the light most favorable to the finding if a reasonable fact finder could, and disregard evidence contrary to the finding unless a reasonable fact finder could not. *In re T.M.P.*, 417 S.W.3d at 562, *citing City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005). When reviewing the factual sufficiency of the evidence, we consider and weigh all the evidence, and will set aside the finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. *Id.* When the evidence is conflicting, we must presume that the fact finder resolved the inconsistency in favor of the order if a reasonable person could do so. *Id.*

The trial court is of course in the best position to observe the witnesses and their demeanor, and therefore, the trial court does not abuse its discretion if evidence of a substantive and probative

character exists to support its decision. *Id.* at 562-63. We will only find that the trial court abused its discretion in determining a child's best interest if, in light of the evidence presented to it, the trial court acted arbitrarily or unreasonably, without reference to any guiding principles, or if it otherwise failed to correctly analyze the law. *Id.* at 562, *citing Downer v. Aquamarine Operators, Inc*., 701 S.W.2d 238, 242 (Tex. 1985). Accordingly, the mere fact that we might have decided an issue differently than the trial court does not establish an abuse of discretion. *Id.* at 563.

## IV. THE POSSESSION ORDER

In his first issue, Husband argues that the trial court abused its discretion in partially rejecting his request for an expanded standard possession order, contending that the evidence was insufficient to support the trial court's decision. We disagree.

### A. The Family Code Guidelines

The Texas Family Code provides a standard possession order for parents who have been designated as joint managing conservators and who reside 100 miles or less apart, giving them the following right to possession: "(1) on weekends throughout the year beginning at 6 p.m. on the first, third, and fifth Friday of each month and ending at 6 p.m. on the following Sunday; and (2) on Thursdays of each week during the regular school term beginning at 6 p.m. and ending at 8 p.m., unless the court finds that visitation under this subdivision is not in the best interest of the child." TEX.FAM.CODE ANN. § 153.312. In addition, the Family Code provides that when a father is a conservator, he shall have possession of the child beginning at 6 p.m. on the Friday preceding Father's Day and ending on Father's Day at 6 p.m. *Id*. §153.314(5).

The Code further states that there is a "rebuttable presumption" that a standard possession order "(1) provides reasonable minimum possession of a child for a parent named as a possessory

conservator or joint managing conservator; and (2) is in the best interest of the child."
*Id.* § 153.252; *see also Burney v. Burney*, 225 S.W.3d 208, 212 (Tex.App.--El Paso 2006, no pet.).

However, the Code also provides that a conservator may make an election to alter the standard possession order to provide for several "alternative beginning and ending possession times for the described periods of possession, unless the court finds that the election is not in the best interest of the child." [3]  TEX.FAM.CODE ANN. § 153.317(a).  For weekend periods of possession, a conservator may elect to have the period of possession begin at the time the child's school is regularly dismissed, and end when school resumes after the weekend. *Id*. § 153.317(a)(1)(A)(B).  In addition, a conservator may elect to have the period for Thursday possessions begin when school is regularly dismissed, and end when school resumes on Friday. *Id*. § 153.317(a)(2)(A)(B).  And finally, a conservator may elect to have possession of the children on Father's Day weekends to end at 8:00 a.m. on the Monday after Father's Day.  *Id*. § 153.317(a)(6).  The Code provides that if elected, the "court shall alter the standard possession order [in accordance with the above] unless the court finds that the election is not in the best interest of the child."  *Id.* § 153.317(a).  As in all other matters involving determinations of the child's best interest, we review a trial court's rejection of a conservator's election of an expanded possession schedule for an abuse of discretion.  *See Burney*, 225 S.W.3d at 213.

## B.  Rejection of Husband's Election

Prior to trial, Husband made a timely election for an expanded possession schedule.  He had in fact had such a schedule under a temporary order that an associate judge had entered at the outset of the case.  Under that expanded possession schedule, Husband had the right to overnight

---

[3] The Code provides that "a conservator must make an election under Subsection (a) before or at the time of the rendition of a possession order.  The election may be made: (1) in a written document filed with the court; or (2) through an oral statement made in open court on the record."  TEX.FAM.CODE ANN. § 153.317(b).

stays with the children on Thursday nights during his weekday periods of possession, and on Sunday nights on his designated weekend periods of possession. The final decree only allowed the overnight stays on Thursday nights.

Husband contends that the trial court abused its discretion in rejecting his request, because the undisputed evidence demonstrated that the children were doing well in school during the eight-month period when the temporary orders were in effect, and that he always got the children to school on time during his periods of overnight possession. Husband further contends that the only evidence that the overnight stays caused any problems for the children came from Wife's testimony that the older son's homework was not being completed when the children stayed with him on Thursday nights. Husband points out that the trial court nevertheless allowed him to continue to have overnight possession of the children on Thursday nights, but not on Sunday nights, which he believes was illogical and without any rational basis.

We disagree with Husband's characterization of the evidence. Wife testified at trial that during Husband's periods of overnight possession, he failed to ensure that their older son's reading assignments were completed. Husband himself admitted that he had failed to sign the child's nightly reading and behavioral folders that the school required parents to sign and return to the school, but only because he was unaware of the signature requirement.

Even aside from the Thursday night issue, the record contains evidence of other educational and safety issues that Wife believed had arisen when Husband had overnight possession of the children while the temporary orders were in effect. Wife testified that she did not believe the expanded possession schedule would be in the children's best interest due to "general, health and safety issues." Wife elaborated on her concerns, testifying about Husband's disruptive conduct when dropping the younger child off at school following his overnight visits, and her concerns

9

regarding a bruise on her son's ear.

Wife worked at a school. She explained that the younger child attended the day care program at the school, while their older child, who was in kindergarten at the time, attended an after-school program at her school. According to Wife, while dropping the younger child off at the school after his overnight visits, Husband had left the older child in his car with the engine running in the school's parking lot on more than one occasion. Wife testified that practice was prohibited by the school and the incident caused concern with her supervisor. Wife also testified that on one occasion after Husband dropped the younger child off at the school, she and another teacher at the school observed a bruise on his ear in an unusual or "strange" place, leading her to believe that Husband had pinched the ear. Based on that concern, Wife had requested a temporary restraining order to prohibit Husband from possession of the children. Husband testified that after being notified of the upcoming hearing on her request, and after being told that he would not be allowed to pick up his children at the school until the matter was resolved, Husband received permission from a school employee to speak with the teacher who had observed the bruise. Husband admittedly videotaped the teacher during their conversation, explaining at trial that he wanted to record the conversation to use as possible evidence to present at the hearing. At trial, Husband denied any wrongdoing, testifying that he had never intentionally hurt the children, but Wife testified that she believed Husband was responsible for the bruise, in part because she believed he had purposely pinched their older son's ear in the past.

Wife further testified at trial that her supervisor spoke with her about Husband's conduct, informing her that she found his conduct to be disruptive, and that she had concerns about the safety of the school's employees because of it. According to Wife, her supervisor warned her that if Husband's conduct continued, their children would need to attend another school. The record

10

reflects that the school also sent Husband two letters prohibiting him from recording anyone at the school, as well as prohibiting him from having access to the school beyond the entryway.

Although Husband presented conflicting evidence justifying his conduct at the school, and denying that he had engaged in any wrongdoing, it was within the trial court's province resolve such conflicts, as the trial court was the sole judge of the credibility of the witnesses and the weight to be given their testimony. *See, e.g.*, *In re J.A.H.*, 311 S.W.3d 536, 541 (Tex.App.--El Paso 2009, no pet.)*; see also Bates*, 81 S.W.3d at 424-25; *In re B.A.W.*, 311 S.W.3d 544, 549 (Tex.App.-- El Paso 2009, no pet.).

Wife testified that she took the lead role in making educational decisions for the children, which would support the trial court's implied finding that it was in the children's best interest to be returned to her on Sunday evening to allow her adequate time to prepare the children for the upcoming school week. Given the children's young age, and the need to ensure that their educational and other needs were being met in a stable environment, the trial court had sufficient evidence upon which to determine that it was in the children's best interest to partially reject Husband's request for an expanded visitation schedule. *See, e.g.*, *Ruiz v. Ruiz*, No. 02-12-00136-CV, 2013 WL 530958, at *5 (Tex.App.--Fort Worth Feb. 14, 2013, no pet.) (mem. op., not designated for publication) (where the evidence indicated that overnight stays with wife during the school week resulted in problems with child's educational needs and otherwise disrupted the child's living conditions, the trial court acted within its discretion by finding that an extended possession order was not in the child's best interest); *Popek v. Popek*, No. 14-10-00201-CV, 2011 WL 2566185, at *2-3, 9 (Tex.App.--Houston [14th Dist.] June 30, 2011, no pet.) (mem.op., not designated for publication) (concluding that trial court acted within its discretion by finding that wife's request for an expanded possession schedule was not in child's best interest where wife

11

returned child to husband with injuries after overnight visits and generally did not provide for the child's needs while in her possession).

Husband's Issue One is overruled.

## V. THE INTERNATIONAL ABDUCTION PREVENTION MEASURES

In his second issue, Husband contends that the trial court abused its discretion by finding that there was a risk of international abduction, and by issuing a permanent injunction that prohibited both parents from removing the children beyond the borders of the United States or its territories. For the reasons set forth below, we agree with Husband that there was insufficient evidence to support the trial court's findings and we therefore conclude that the permanent injunction should be dissolved.

### A. Applicable Law

The Texas Family Code provides trial courts with a statutory basis for determining the risk of international abduction in certain cases and allows for preventive measures based on that risk. *See* TEX.FAM.CODE ANN. § 153.501-.503. In determining the risk of international abduction under Section 153.502, a trial court should engage in the following two-step process: (1) determine if there is credible evidence of a risk of abduction; and (2) if so, evaluate the risk. *Id.* § 153.502. In determining whether there is a risk of abduction, the trial court must look to Section 153.502(a) of the Code, which provides a list of evidentiary factors the court "shall consider" in determining whether there is a potential risk of abduction, including whether the parent: (1) has taken, enticed away, kept, withheld, or concealed the child; (2) has threatened to do so; (3) lacks financial reason to stay in the United States; (4) has recently engaged in planning activities that could facilitate the removal of the child from the United States; (5) has a history of domestic violence; or (6) has a criminal history or a history of violating court orders. *Id.* § 153.502(a)(1)-(6). We refer to these

as the "subsection (a)" factors.

As various courts have recognized, a trial court need not find that all six subsection (a) factors exist in order to find the existence of a potential risk of abduction, but instead, it need only find the existence of credible evidence to support a finding that one of the factors exists. *See Arredondo v. Betancourt*, 383 S.W.3d 730, 740-44 (Tex.App.--Houston [14th Dist.] 2012, no pet.); *In re Sigmar*, 270 S.W.3d 289, 299-300 (Tex.App.--Waco 2008, orig. proceeding); *Chen v. Hernandez*, No. 03-11-00222-CV, 2012 WL 3793294, at *10-11 (Tex.App.--Austin Aug. 28, 2012, pet. denied) (mem. op., not designated for publication); ; *Elshafie v. Elshafie*, No. 13-10-00393-CV, 2011 WL 5843674, at *5 (Tex.App.--Corpus Christi Nov. 22, 2011, no pet.) (mem. op., not designated for publication).

If the trial court finds that there is credible evidence of a risk of abduction of the child by a parent of the child under subsection (a), the trial court then proceeds to the second step to evaluate the extent of the risk, and to determine whether to take one or more of the preventive measures described in Section 153.503. *See id.* § 153.502(b)(c). Section 153.502(b) sets forth two mandatory factors for the court to consider in evaluating the extent of the risk: (1) whether the parent has strong familial, emotional, or cultural ties to another country, particularly one that is not a signatory to or compliant with the Hague Convention on the Civil Aspects of International Child Abduction; and (2) whether the parent lacks strong ties to the United States., regardless of whether the parent is a citizen or permanent resident of the United States. *Id.* § 153.502(b)(1)-(2). Subsection (c) sets out additional, discretionary factors the court may consider in evaluating the risk, many of which overlap with subsection (b). *See id.* § 153.502(c)(1)-(4). We refer to these as the "subsection (b) and (c)" factors.

Once a trial court has determined that a risk of international abduction exists under

13

subsection (a), and has determined the extent of that risk under subsections (b) and (c), Section 153.503 of the Code authorizes the trial court to take appropriate measures to prevent a parent from engaging in international abduction, which include imposing passport and travel controls that: "(A) prohibit the parent and any person acting on the parent's behalf from removing the child from this state or the United States; (B) require the parent to surrender any passport issued in the child's name, including any passport issued in the name of both the parent and the child; and (C) prohibit the parent from applying on behalf of the child for a new or replacement passport or international travel visa." *Id.* § 153.503(a)(4). And in determining whether to take any of these measures, the Code provides that the trial court shall consider: (1) public policies described in Section 153.001(a) and the best interest of the child under Section 153.002; (2) the risk of international abduction based on the court's evaluation of risk factors set out in Section 153.502; (3) any obstacles to locating, recovering and returning the child if international abduction occurs; and (4) the potential physical or psychological harm to the child if international abduction occurs. *Id.* § 153.501(b)(1)-(4).

We review a court's decision to impose international abduction prevention measures under the same abuse of discretion standard set forth above. *See Karenev v. Kareneva*, No. 2-06-269-CV, 2008 WL 755285, at *3 (Tex.App.--Fort Worth Mar. 20, 2008, no pet.) (mem. op., not designated for publication); *see also In re Sigmar*, 270 S.W.3d at 297-98; *Boyo v. Boyo*, 196 S.W.3d 409, 423-24 (Tex.App.--Beaumont 2006, no pet.).

## B. Analysis

Husband has two criticisms of the trial court's finding that there was credible evidence of a potential risk of international abduction. First he contends that the trial court failed to make an affirmative finding that any of the subsection (a) risk factors existed, and second, he contends that

14

the evidence was both factually and legally insufficient to support an implied finding that any of the risk factors existed.[4]

### 1. *Whether an affirmative finding was required*

While the trial court made a finding that there was a potential risk of international abduction, it did not make an express finding of which of subsection (a) risk factors it believed existed. Instead, in its findings, the trial court only listed factors relevant to subsections (b) and (c), which are to be used to assess the *extent*, rather than the *existence*, of the risk. Specifically, the court found that Husband had "strong familial, emotional, or cultural ties" to Egypt, that he had family members who lived in Egypt (some of whom had lived with his family in the United States), and that Husband had traveled between the two countries during the marriage. The trial court also found, in accordance with subsection (b) and (c) that Egypt was not a signatory to or compliant with the Hague Convention on the Civil Aspects of International Child Abduction, that it did "not provide for the extradition of a parental abductor and the return of the children to the United States," and that this posed obstacles to the recovery and return of a child who is abducted to Egypt from the United States.

We need not decide if the trial court was required to make an express finding of a section (a) factor, or whether an implied finding will do, because whether express or implied, the evidence in this record would not support either type of finding.

### 2. *Whether the injunction was supported by sufficient evidence*

Husband contends that there was insufficient evidence to support even an implied finding

---

[4] As a preliminary matter, Wife argues that Husband waived his right to contest the international travel injunction, as he agreed to the necessity of putting travel restrictions in place for the children's safety. We find no such waiver. At trial, Husband was asked if he was "okay with the court putting restrictions in to keep the children safe in traveling," and Husband responded in the affirmative. Husband did not, however, agree to a complete ban on international travel nor did he agree to a finding that there was a risk of international abduction.

that any of the six risk factors enumerated in subsection (a) of the Code existed.[5]   We agree.

Wife does not identify which specific subsection (a) factor is in play, and several are plainly not at issue here (i.e. no threat to remove children, no showing of lack of financial resources, no history of domestic violence or criminal history or violation of court orders).   At most, Wife suggests that the trial court had sufficient evidence to impliedly find that Husband had "recently engaged in planning activities that could facilitate the removal of the child[ren] from the United States."   TEX.FAM.CODE ANN. § 153.502(a)(4).   As Wife points out, the Code lists a variety of factors that a trial court may consider in determining whether a parent has engaged in such planning activities, which include: "(A) quitting a job; (B) selling a primary residence; (C) terminating a lease; (D) closing bank accounts; (E) liquidating other assets; (F) hiding or destroying documents; (G) applying for a passport or visa or obtaining other travel documents for the parent or the child; or (H) applying to obtain the child's birth certificate or school or medical records."   *Id*. § 153.502(a)(4).   Of these, Wife contends that the evidence presented at trial supported a finding that Husband had either hidden or destroyed documents, pointing out that Husband admitted that he had possession of the older child's passport, and had failed or refused her requests to turn the passport over to her prior to trial, informing her that he could not find it.   She contends that Husband's failure to produce the passport was "suspect," and that it supported an inference that he was engaging in planning activities to facilitate taking the older child out of the country.

As Husband points out, however, Wife never made this argument at the trial court.   More

---

[5] In his reply brief, Husband also argues for the first time that there was also insufficient evidence to support the trial court's findings regarding the subsection (b) and (c) factors relevant to the extent of the risk of abduction, i.e., that he had ties to Egypt, that Egypt was not a signatory to the Hague Convention, and that Egypt did not provide for extradition of parental abductors.   We note, however, that Rule 38.3 of the Texas Rules of Appellate Procedure restrict a reply brief to addressing only those matters raised in the appellee's brief. TEX.R.APP.P. 38.3; *see also In Interest of M.D.G.*, 527 S.W.3d 299, 302-03 (Tex.App.--El Paso 2017, no pet.).   Thus, a reply brief may not be utilized to present a new issue to the court, and we therefore will not consider this newly-raised issue in our analysis.   However, we do consider the arguments set forth in Husband's reply brief to the extent that they respond to the arguments that Wife raised in her brief.   *Id.* at 303.

16

importantly, we find this evidence insufficient to support a finding that Husband had "recently" engaged in any planning activities to facilitate the removal of the children from the country within the meaning of the Family Code. Mother herself testified that the parties had jointly applied for the older child's passport several years ago, when the parties were still married, with the idea of taking their infant son to visit Husband's family in Egypt. However, Mother testified that they jointly made the decision not to go in light of the dangers of traveling to that region; the record indicates that the passport was never used, and was last seen on an unspecified date in a safe that ultimately ended up in Husband's possession. Although both parties agreed that the passport was missing, there is simply no evidence to suggest that Husband was intentionally hiding it from Mother, or otherwise seeking to retain it, for the purpose of taking the child out of the country. We also find it significant that after Husband informed Wife that he could not find the passport, Wife reported the passport missing to the appropriate authorities, yet there is no evidence that Husband took any steps to apply for a new passport or any other travel documents for either of the children.

We also note that the record is devoid of any of the other factors that would support a finding that Husband had recently engaged in any planning activities to facilitate the children's removal from the country. To the contrary, the record demonstrated that Husband was financially secure, and held a job as a software engineer in the United States for the past five years. In addition, Wife presented no evidence that Husband had recently closed any bank accounts, sold any property, liquidated any assets, or terminated any leases. In fact, Husband testified that a week before trial, he had purchased a home in Keller, Texas, as he believed it was in a good school district for the children.

Accordingly, we conclude that the evidence was insufficient to support the trial court's

finding that there was a potential risk of international abduction, and that the trial court abused its discretion in imposing the international abduction measures in the Final Decree of Divorce.[6]

Husband's Issue Two is Sustained.

## VI. THE ADDITIONAL INJUNCTIONS

In Issue Four, Husband contends that the trial court abused its discretion by imposing the following two permanent injunctions prohibiting him from: (1) "[m]aking audio or video recordings of [Wife] or the faculty and staff of the children's school; and" (2) "[l]eaving any child alone and unsupervised in a motor vehicle." In particular, he contends that the evidence was factually insufficient to support a finding that these two injunctions were in the best interest of the children.

### A. Applicable Law

Although the Texas Family Code does not expressly address the situations in which a trial court may issue a permanent injunction in a SAPCR proceeding, it is well-established that the trial court may do so when it is in the best interest of the children. *See, e.g.*, *Peck v. Peck*, 172 S.W.3d 26, 35 (Tex.App.--Dallas 2005, pet. denied); *see also King v. Lyons*, 457 S.W.3d 122, 126 (Tex.App.--Houston [1st Dist.] 2014, no pet.)*; In re A.A.N.*, No. 02-13-00151-CV, 2014 WL 3778215, at *1 (Tex.App.--Fort Worth July 31, 2014, no pet.) (mem. op., not designated for publication). Further, the Family Code expressly provides that a trial court may impose "restrictions or limitations on a parent's right to possession of or access to a child," with the caveat

---

[6] Although we find no evidence to support a finding that a risk of international abduction existed, we note that aside from abduction concerns, a trial court has the discretion to impose travel restrictions that would otherwise be in the best interest of the children. *See, e.g.*, *Messier v. Messier*, 389 S.W.3d 904, 910 (Tex.App.--Houston [14th Dist.] 2012, no pet.) (recognizing that it "would have been reasonable for the trial court to conclude that, quite apart from any risk of international abduction, it was in the best interest of the children to limit [Wife's] control over international travel with the children," based on evidence of Wife's mental health issues and past irrational behavior). However, since the trial court expressly based its travel restriction on the potential risk of international abduction, we do not consider whether the trial court had other grounds for imposing the restriction.

that they do "not exceed those that are required to protect the best interest of the child." TEX.FAM.CODE ANN. § 153.193; *see also id.* § 153.072 (trial court "may limit the rights and duties of a parent appointed as a conservator if the court makes a written finding that the limitation is in the best interest of the child."); *Messier v. Messier*, 389 S.W.3d 904, 908-09 (Tex.App.--Houston [14th Dist.] 2012, no pet.) (recognizing that a trial court may "grant, deny, restrict, or limit any of a possessory conservator's rights, privileges, duties, and responsibilities with respect to the child as is necessary to protect the child's best interest.").

As with any other finding relating to a child's best interest, we review the trial court's decision to impose a permanent injunction regulating a parent's conduct under an abuse of discretion standard.[7]  *See Flowers v. Flowers*, 407 S.W.3d 452, 457 (Tex.App.--Houston [14th Dist.] 2013, no pet.);  *see also In re H.D.C.*, 474 S.W.3d 758, 764 (Tex.App.--Houston [14th Dist.] 2014, no pet.) (recognizing that a trial court has "broad discretion in fashioning restrictions on a parent's possession and access that are in the best interest of the child.").

## B.  The Videotaping Injunction

Husband contends that there was insufficient evidence to support the trial court's finding that he had a "history" of recording Wife or the staff at the children's school, or that it was in the children's best interest to enjoin the parties from engaging in such conduct in the future.   In particular, Husband contends that the injunction was based on a "single" and isolated event, which he seeks to categorize as being unrelated to the best interests of the children.   We disagree.

---

[7] Unlike some other sister courts, the Fort Worth Court of Appeals requires a party seeking a permanent injunction in a Suit Affect the Parent Child Relationship (SAPCR) proceeding to plead and prove the following four requirements that are mandated in a traditional civil case: (1) a wrongful act, (2) imminent harm, (3) irreparable injury, and (4) absence of an adequate remedy at law.   *See In re A.A.N.*, No. 02-13-00151-CV, 2014 WL 3778215, at *1 (Tex.App.--Ft. Worth July 31, 2004, no pet.), *citing* TEX.FAM.CODE ANN. § 105.003(a) ("Except as otherwise provided by this title, proceedings shall be as in civil cases generally.").   Husband does not contend that the trial court's order failed to meet these requirements, and instead only contends that the evidence was insufficient to support a finding that the injunctions imposed were in the best interest of the children.   As such, we restrict our analysis to that issue.

As a preliminary matter, a trial court may find that a parent has a "history" of engaging in conduct even though the parent may have only engaged in a single act. *See, e.g.*, *C.C. v. L.C.*, No. 02-18-00425-CV, 2019 WL 2865294, at \*16-17 (Tex.App.--Fort Worth July 3, 2019, no pet.) (mem. op., not designated for publication) (trial court has the discretion to determine that a single act of abuse constitutes a "history" of abuse that disqualifies a parent from being appointed as a joint managing conservator under the Family Code); *see also In re L.C.L.*, 396 S.W.3d 712, 717 (Tex.App.--Dallas 2013, no pet.) ("A single act of violence or abuse can constitute a 'history' of physical abuse for purposes of . . . the Family Code."). In the present case, the undisputed evidence revealed that Father did in fact engage in recording activities at the school, and we therefore do not have an issue with the trial court finding that Father had a "history" of engaging in such conduct.

Nor is it impermissible for a trial court to impose a permanent injunction based on a single act committed by a parent, if the trial court determines that it would be in the children's best interest to prevent the parent from repeating the act in the future. *See, e.g.*, *In Interest of S.V.*, No. 05-16-00519-CV, 2017 WL 3725981, at \*10-11 (Tex.App.--Dallas Aug. 30, 2017, pet. denied) (not designated for publication) (upholding permanent injunction upheld based on undisputed evidence in the record that father struck one of the children in the face at least once). And in the present case, we believe there was sufficient evidence from which the trial court could have determined that it was in the children's best interest to prevent the parties from engaging in recording activities in the future at the children's school, given Mother's testimony that the school found Father's condut to be disruptive in nature and threatened to disenroll the children from the school if the conduct continued.

In addition to his sufficiency of the evidence argument, Husband also raises a constitutional

issue, contending that the injunction against recording placed an "unreasonable (and potentially unconstitutional) restriction" on his First Amendment rights. Husband, however, did not raise this issue in the trial court, and he therefore did not adequately preserve this issue for our review, as even constitutional issues must be addressed in the first instance in the trial court. *See* TEX.R.APP.P. 33.1(a)(1) (to preserve a complaint for appellate review, a party must present to the trial court a timely request, motion or objection, state the specific grounds therefor, and obtain an adverse ruling); *see also In Interest of S.V.*, 2017 WL 3725981, at \*8-10 (issue of whether trial court's injunction prohibiting father from directly contacting the children's teachers and coaches violated his First Amendment rights was not raised in the trial court, and was therefore not preserved for appellate review); *In re K.L.D.*, No. 12-10-00386-CV, 2012 WL 2127464, at \*8 (Tex.App.--Tyler June 13, 2012, no pet.) (mem. op., not designated for publication) (where mother did not complain in trial court that order limiting the method by which parties could communicate was unconstitutional, she waived her right to raise that issue on appeal); *see generally In re L.M.I.*, 119 S.W.3d 707, 710-11 (Tex. 2003) (recognizing that even constitutional claims must be preserved for appellate review).

## C. The Vehicle Injunction

Husband next contends that the trial court abused its discretion by finding that he had a "history of leaving a child alone and unsupervised in a motor vehicle," and that it was in the children's best interest to permanently enjoin the parties from engaging in such conduct in the future. Once again, Husband contends that the trial court's order was based on a single isolated event when he left his older son in the car while dropping off his younger child for day care. We disagree with Husband's characterization of the evidence.

At trial, Wife testified that Husband had left their older child alone in the car on more than

one occasion in the school parking lot, and that doing so was against the school rules, which in turn created problems at the school. Wife further testified that she offered to stand by the car for their older son's safety while Father took their younger son into the school, but Husband declined as he did not want her to have access to the children during his periods of possession. Although Husband claimed that he had permission from the school's owner to leave his son in the car or that it was not against the school's policy to do so, the trial court was free to resolve this conflict in the evidence in Wife's favor. *See generally In re T.M.P.*, 417 S.W.3d at 562.

Regardless of whether leaving the child alone in the car was against the school's policy, we note that leaving a young child alone in a car not only poses obvious safety issues but can be considered criminal in some instances. *See* TEX.PENAL CODE ANN. § 22.10 (a person comments a Class C misdemeanor if the person "intentionally or knowingly leaves a child in a motor vehicle for longer than five minutes, knowing that the child is: (1) younger than seven years of age; and (2) not attended by an individual in the vehicle who is 14 years of age or older.") Accordingly, the trial court did not abuse its discretion by finding that it was in the children's best interest to permanently enjoin the parties from leaving their children alone and unsupervised in a running vehicle. *See, e.g.*, *Capello v. Capello*, 922 S.W.2d 218, 220 (Tex.App.--San Antonio 1996, no writ) ("The trial court, in considering the best interest of the child, had the discretion to weigh and compare appellant's inconvenience with the safety and well-being of the child.").

Husband's Issue Four is Overruled.

## VII. THE COMMUNICATION AND OVERNIGHT TRAVEL RESTRICTIONS

In Issue Five, Husband contends that the trial court abused its discretion by placing unreasonable restrictions on his possession of the children by: (1) requiring the parent who has possession of the children to allow the other parent to have electronic communication daily with

the children, and (2) requiring the parent in possession of the children to give the other parent notice of his or her intent to travel overnight with the children and to provide information pertaining to where the child would be staying during such travel. We disagree.

As set forth above, a trial court in a SAPCR proceeding has the discretion to impose "restrictions or limitations on a parent's right to possession of or access to a child," as long as they do "not exceed those that are required to protect the best interest of the child." TEX.FAM.CODE ANN. § 153.193. Our review of the record reveals that there was sufficient evidence to support the trial court's determination that the above-described restrictions were in the children's best interest.

At trial, Wife testified that Husband had limited the children's contact with her while they were in his possession, and that he had refused to allow her any contact with the children for more than two weeks during the prior summer, as well as during the week of spring break when she was seeking to obtain information concerning the status of the younger child's illness. In addition, the undisputed evidence demonstrated that Husband had failed or refused to provide her with information regarding the children's whereabouts during his periods of summer possession when he traveled with the children. Given the young age of the children, and the parties' prior difficulties in communicating, we conclude that the trial court did not abuse its discretion in imposing mutual restrictions on the parties to help facilitate communication between them, and to allow the parents to remain in contact with the children during their periods of non-possession.

Husband's Issue Five is Overruled.

## VIII. ISSUE THREE: THE FINDING OF ADULTERY

In his third issue, Husband contends that the trial court erred in granting the parties' divorce on the grounds of both adultery and insupportability, asserting that the evidence presented at trial

was both legally and factually insufficient to support a finding that he committed adultery. We disagree.

## A. Applicable Law

The Texas Family Code provides that a trial court "may grant a divorce in favor of one spouse if the other spouse has committed adultery." TEX.FAM.CODE ANN. § 6.003. Adultery means the "voluntary sexual intercourse of a married person with one not the spouse." *In re Marriage of C.A.S. & D.P.S.*, 405 S.W.3d 373, 383 (Tex.App.--Dallas 2013, no pet.), *quoting In re S.A.A.*, 279 S.W.3d 853, 856 (Tex.App.--Dallas 2009, no pet.); *see also Ayala v. Ayala*, 387 S.W.3d 721, 733 (Tex.App.--Houston [1st Dist.] 2011, no pet.). Adultery is not limited to actions committed before the parties separated. *In re Marriage of C.A.S. & D.P.S.*, 405 S.W.3d at 383, *citing Ayala*, 387 S.W.3d at 733; *Bell v. Bell*, 540 S.W.2d 432, 435 (Tex.Civ.App.--Houston [1st Dist.] 1976, no writ). Adultery can be shown by direct or circumstantial evidence, but there must be clear and positive proof of the adultery, and therefore, "mere suggestion and innuendo are insufficient." *In re Marriage of C.A.S. & D.P.S.*, 405 S.W.3d at 383; *see also Newberry v. Newberry*, 351 S.W.3d 552, 556 (Tex.App.--El Paso 2011, no pet.) (recognizing that adultery can be shown by circumstantial evidence); *Ayala*, 387 S.W.3d at 733 ("Mere suggestion and innuendo" are insufficient to prove adultery).

## B. Analysis

Husband acknowledges that Wife listed adultery as one of the grounds for the divorce in her pleadings, and further acknowledges that Mother's attorney confirmed at trial that she had pled adultery as a ground for the divorce. However, Husband finds it significant that Wife's attorney did not "mention any grounds for divorce in her opening statement," and claims that Wife did not address issue of adultery in her testimony, but instead "only testified that the marriage had become

insupportable and that there was no chance of reconciliation."

The undisputed evidence at trial established, however, that Husband had a child with another woman which was born child during his marriage to Wife. In fact, Wife testified that Husband named this same woman as his other children's "stepmother" in the emergency contact list at the children's school prior to their divorce. As Wife points out, given that Husband admittedly fathered a child with another woman during the course of his marriage to Wife, it "reasonably follows" that he had sexual relations with that woman, and that he therefore committed adultery. *See, e.g.*, *Ayala*, 387 S.W.3d at 733-34 (evidence supported trial court's finding that husband had committed adultery, where the undisputed testimony reveals that husband had been living with another woman during the course of the parties' marriage and that they had a child together during that time). We therefore conclude that the trial court did not abuse its discretion in granting the divorce on the basis of adultery.

Husband's Issue Three is overruled.

## IX. THE AWARD OF ATTORNEY'S FEES

In Issue Six, Husband contends that the trial court abused its discretion in awarding Wife attorney's fees in the amount of $10,000.00 because (1) she failed to segregate recoverable from unrecoverable fees and (2) the fees were not shown to be reasonable and necessary. We disagree.

### A. Applicable Law and Standard of Review

The Texas Family Code gives a trial court the discretion to award reasonable attorney's fees and expenses in a case involving the parent-child relationship. TEX.FAM.CODE ANN. § 106.002. In general, the trial court's determination of what constitutes a reasonable and necessary attorney's fee is subject to an abuse of discretion standard on appeal. *See Tucker v. Thomas*, 419 S.W.3d 292, 296 (Tex. 2013) ("Section 106.002, applicable to all SAPCRs, invests

a trial court with general discretion to render judgment for reasonable attorney's fees"). However, the Texas Supreme Court recently clarified that a trial court must use the "lodestar method" in determining a reasonable amount of attorney's fees when fees are shifted from one party to another. *See Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 494 (Tex. 2019). The lodestar method first requires the trial court to determine the reasonable hours spent by counsel in the case and a reasonable hourly rate for such work. *Id.* The court then multiplies the number of such hours by the applicable rate, the product of which is the base fee or lodestar. *Id.* The court may then adjust the base lodestar up or down (apply a multiplier), if relevant factors indicate an adjustment is necessary to reach a reasonable fee in the case. *Id.*, *citing El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 760 (Tex. 2012). The *Rohrmoos* court further noted that general, conclusory testimony devoid of any real substance will not support a fee award, and that instead, a claimant seeking an award of attorney's fees must prove the attorney's reasonable hours worked and reasonable rate by presenting sufficient evidence to support the fee award sought. *Id.* at 501-502. "Sufficient evidence includes, at a minimum, evidence of (1) particular services performed, (2) who performed those services, (3) approximately when the services were performed, (4) the reasonable amount of time required to perform the services, and (5) the reasonable hourly rate for each person performing such services." *Id.* at 502. Although billing records are not required, they are "strongly encouraged to prove the reasonableness and necessity of requested fees when those elements are contested." *Id.*

## B. Segregation of Attorney's Fees

When the parties mediated their property disputes, the settlement agreement provided that each party was to pay their own attorney's fees. The mediation agreement did not prohibit the trial court from awarding attorney's fees in the SAPCR proceeding. Wife, however, would need

to "segregate" the recoverable from unrecoverable fees. And we agree with Husband it was incumbent upon Wife's attorney to do so. *See Kinsel v. Lindsey*, 526 S.W.3d 411, 427 (Tex. 2017) (party seeking attorney's fees must segregate the fees accrued for claims for which attorney's fees were recoverable from those that were not). Yet we disagree with Husband's claim that Wife failed to segregate her fees.

At the close of trial, Wife's attorney testified that Wife had incurred a total of $18,872.29 since Wife retained her services in October of 2017, which included both recoverable and non-recoverable fees. Although Wife's attorney did not provide testimony delineating how much of that total represented work she performed on the property issues and the SAPCR proceeding, she submitted billing records into evidence clearly speaking to that issue. In particular, her billing records demonstrated that after all issues pertaining to the mediated settlement agreement were finalized in March of 2018, Wife's attorney focused her attention solely on the remaining SAPCR issues and billed a total of $10,278.54 for her services through the date of trial. Further, at the close of trial, the court acknowledged its understanding that only those amounts billed with respect to the SAPCR proceeding could be awarded. The court ultimately awarded Wife $10,000 in attorney's fees, which directly corresponds to the work Wife's attorney performed with respect to the SAPCR proceeding, as reflected in the billing records. Accordingly, we conclude that the trial court's award did not include any fees that were not recoverable.

## C. Evidence of Reasonableness and Necessity

Husband next contends that the trial court abused its discretion in finding that the award of $10,000.00 in attorney's fees was reasonable and necessary, contending that Wife and her attorney failed to present sufficient evidence to support the court's finding. Our review of the record belies this contention.

In support of her request for an award of attorney's fees, Wife's attorney testified that she had been licensed since 2009, and that she practiced exclusively in family law. She further testified that she billed Wife at a rate of $250.00 an hour, which she opined was a reasonable fee in the area. Husband did not object to either her billing rate or to the total amount billed. Wife's attorney's billing records detailed the work that she performed on the SAPCR issues leading up to the trial, who performed the work, when the services were performed, the amount of time spent for each service, and the hourly rate for each person performing the service. Husband did not contest any of the entries made in those billing record as being unreasonable in the trial court, and has failed to do so on appeal.

Instead, on appeal, Husband finds it significant that Wife's attorney testified at trial that her bill was reasonable in light of Husband's failure to communicate prior to trial, while Husband's attorney testified that his bill was reasonable based on Wife's failure to cooperate. Husband appears to believe that this created a conflict in the evidence that required Wife to obtain an independent expert witness to justify her request for attorney's fees. We find this argument unavailing for two reasons. First, we fail to see how this testimony created a true conflict, as it is possible that both parties were being uncommunicative, thereby raising the costs of litigation for both parties. Second, even if this could be considered a conflict in the evidence, it was of a factual nature, and it was well within the trial court's power to resolve that conflict, without the need for expert witness testimony, as part of its role in determining whether the fees requested were reasonable. *See Smith v. Patrick W.Y. Tam Tr.*, 296 S.W.3d 545, 546 (Tex. 2009) (recognizing that the question of the reasonableness of attorney's fees is generally an issue for the trier of fact).

Accordingly, we conclude that the trial court's award of attorney's fees to Wife was supported by legally sufficient evidence.

28

Husband's Issue Six is overruled.

## X. CONCLUSION

For the reasons set forth above, we sustain Husband's second issue, concluding that the trial court abused its discretion in finding that there was a risk of international abduction and in imposing international abduction prevention measures. We therefore modify the trial court's Final Decree of Divorce to dissolve that portion of the judgment. We overrule Husband's other issues and affirm the trial court's judgment as so modified.

JEFF ALLEY, Chief Justice

February 26, 2020

Before Alley, C.J., Rodriguez, and Palafox, JJ.

29